Lynn A. HANDSOME, Plaintiff,

v.

RUTGERS UNIVERSITY, the STATE UNIVERSITY OF NEW JERSEY, Defendant.

Civ. A. No. 78–143.

United States District Court,
D. New Jersey.

March 2, 1978.

As Amended March 6, 1978.

Essex-Newark Legal Services by Jonathan I. Epstein, Newark, N. J., for plaintiff.

Pitney, Hardin & Kipp by John W. Bissell, Morristown, N. J., for defendant.

## OPINION

STERN, District Judge.

This case presents the question whether a state university may withhold transcripts and deny registration to a former student whose student loans have been discharged in bankruptcy. Not unmindful of the widespread abuse of the bankruptcy laws on the part of students, this Court holds that such thinly-veiled coercion on the part of a state university to compel repayment of loans duly discharged under the federal bankruptcy laws violates the Supremacy Clause and plaintiff's right to equal protection as guaranteed by the Fourteenth Amendment. Accordingly, the defendant is permanently enjoined from continuing those practices.

The facts here—perhaps more compelling than most—have been stipulated by the parties. Plaintiff Lynn Handsome attended Newark College of Arts & Sciences, a division of Rutgers University, from 1968 through 1974. While a student at Rutgers, she borrowed a total of $4,600 in the form of National Defense Student Loans and National Direct Student Loans.[1] It is undisputed that, at the time she took out these

---

1. National Defense Student Loans and National Direct Student Loans (hereinafter referred to collectively as "NDLS loans") are administered by the Department of Health, Education and Welfare in conjunction with participating universities. Under this program, the federal government furnishes 90% of the loan, and the university provides the remaining 10%. The university is charged with the responsibility of collecting the loans as they fall due, and its overall collection record determines the amount of subsequent NDLS monies to be made available to students of that university. *See* 45 C.F.R. §§ 144.1 *et seq.*

loans, she had every intention of repaying them.

Beginning in 1973, plaintiff experienced serious health problems and was forced to undergo surgery. Finally, in January of 1975, her health had deteriorated to the point where it interfered with her academic performance and she was forced to withdraw from college.

In the meantime, payments on plaintiff's NDLS loans began to fall due. Because of her medical expenses, she found herself unable to meet her repayment obligations. Upon her default, the NDLS loan principal was accelerated, payment was demanded in full and, in July 1976, Rutgers obtained a default judgment against plaintiff in state court in an amount of $4,991.75 plus costs and interests.

In April 1977, plaintiff filed a petition for bankruptcy. The liabilities listed in her petition were in excess of $25,000—$7,000 representing medical expenses—and her assets totalled $368.85. Included in her schedule of creditors was Rutgers University, which made no objection to the discharge of her obligations in bankruptcy. On June 13, 1977, plaintiff was adjudicated a bankrupt.

In December 1977, plaintiff applied for readmission to Rutgers. By letter dated December 22, 1977, she was informed that the Scholastic Standing Committee had approved her readmission. However, it is the policy of the defendant to put "place hold" notices upon the records of all students who are more than three months delinquent in their debts to the university, precluding both their registration and the release of their transcripts. Accordingly, when plaintiff attempted to register on January 5, 1978, she was informed that such a notice had been placed on her records. Thus, not only was she prevented from registering, but she has been thwarted in her efforts to apply for admission to a Physician's Assistance Program, because she cannot supply the required transcripts.

It is at this point that plaintiff sought court intervention. On January 24, 1978 she filed the instant complaint alleging that Rutgers' actions violate the Constitution and the Bankruptcy Act, and she applied for temporary restraints.[2] The Court issued a temporary restraining order, directing Rutgers to allow plaintiff to register. At issue now is whether this temporary restraining order should ripen into a permanent injunction, compelling defendant both to permit plaintiff to remain at the university and to release her transcripts so that she will be able to pursue her education elsewhere.

Prior to passing on the merits of plaintiff's claims, the Court will dispose of defendant's contention that there is no federal subject matter jurisdiction over the matter under either 28 U.S.C. § 1331 or 28 U.S.C. § 1343(3) and (4).

Defendant argues that this Court lacks federal question jurisdiction under 28 U.S.C. § 1331 because the requisite amount in controversy is lacking. Insofar as plaintiff can be said to be asserting a claim which arises under the Bankruptcy Act, it appears undisputed that this action "arises under" federal law. *See Girardier v. Webster College,* 563 F.2d 1267 (8th Cir. 1977). However, defendant claims that the amount in controversy should be measured by the amount of the discharged loans, which concededly is under $10,000. Plaintiff asserts that the amount in controversy is the value of her right to a college education, an amount which none could doubt must be in excess of $10,000.

While the question is not free from doubt among the Circuits, *see generally,* Earnest, *The Jurisdictional Amount in Controversy in Suits to Enforce Federal Rights,* 54 Tex.L.Rev. 527 (1976), it is clear that in the Third Circuit, intangible rights can be accorded a monetary value for purposes of meeting the amount in controversy requirement. Thus, in *Spock v. David,* 469 F.2d 1047 (3rd Cir. 1972), an action by polit-

---

2. The complaint was originally framed as a class action, but the class allegations have been withdrawn by the plaintiff.

ical candidates to compel defendants to permit them to campaign on a military base, Judge Gibbons rejected the contention that the rights asserted were incapable of valuation. Noting that in actions seeking injunctive relief, "the measure of jurisdiction is the value of the right sought to be protected", *id.* at 1052, Judge Gibbons looked to the value of a political campaign and concluded that it must exceed $10,000. Here, the right to be protected is the right to a college education. None can dispute that by withholding plaintiff's transcripts defendant forces her to repeat the education she has undergone thus far. In reality, of course, the withholding of transcripts does more than merely force her to repeat elsewhere courses already taken at Rutgers. It is unlikely that any college or university will admit plaintiff without a transcript of her prior work, or would permit her to repeat for credit courses already taken elsewhere. The only purpose that Rutgers has for refusing transcripts is to recoup monies owed. This much was candidly admitted at oral argument. And certainly no one can dispute that the cost of such an education is well in excess of $10,000.[3] Accordingly, this Court finds there is federal question jurisdiction.

In any event, because the constitutional claims asserted are substantial—indeed so substantial that the Court finds for plaintiff on the merits—it is clear that there is subject matter jurisdiction under 28 U.S.C. § 1343(3) and (4),[4] which has no requirement that there be an amount in controversy. *See Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). There being a substantial constitutional claim under 42 U.S.C. § 1983

that defendant's actions violate the Fourteenth Amendment's Equal Protection Clause, this Court has pendent jurisdiction over plaintiff's remaining claims under the Bankruptcy Act. *See Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1973).

Plaintiff's principal contention is that defendant's actions impinge upon the policies of the Bankruptcy Act and are, therefore, invalid under the Supremacy Clause. She relies primarily on the Supreme Court's decision in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

In *Perez,* plaintiffs, two bankrupts whose licenses had been suspended, attacked the constitutionality of a state statute which provided for the suspension of the driver's licenses of persons who had outstanding automobile accident judgments against them, notwithstanding that such judgments may have been discharged in bankruptcy. The Supreme Court framed the issue as follows:

> What is at issue here is the power of a State to include as part of [a] comprehensive enactment designed to secure compensation for automobile accident victims a section providing that a discharge in bankruptcy of the automobile accident tort judgment shall have no effect on the judgment debtor's obligation to repay the judgment creditor, at least insofar as such repayment may be enforced by the withholding of driving privileges by the State.

*Id.,* at 643, 91 S.Ct., at 1708. Concluding that the sole purpose of the statute was to provide leverage for the collection of debts, the Supreme Court held the statute unconstitutional under the Supremacy Clause and overruled its decisions to the contrary.[5]

---

**3.** On oral argument, even counsel for defendant conceded that "It certainly costs more than that [$10,000] for four full years of study at most places . . ." Tr. 2/21/78 at 6.

**4.** 28 U.S.C. § 1343 provides, in pertinent part, that:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . . . .

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation,

custom or usage, of any right, privilege or immunity secured by the Constitution . . . or by any Act of Congress providing for equal rights of citizens . . . .

(4) To recover damages or secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

**5.** *See Kesler v. Department of Public Safety of Utah,* 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962); *Reitz v. Mealey,* 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21 (1941).

The Court stated that the purpose of the Bankruptcy Act is to give the debtor "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt," *id.*, at 648, 91 S.Ct., at 1710 [citations omitted]. The Court held that the statute "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress", *id.*, at 649, 91 S.Ct., at 1711 [citations omitted] and, thus, was invalid under the Supremacy Clause.

On the authority of *Perez* the lower courts have invalidated a rule providing for the suspension of municipal employees who have invoked the bankruptcy laws, *see Rutledge v. City of Shreveport,* 387 F.Supp. 1277 (W.D.La.1975), *appeal dismissed,* No. 75–1775 (5th Cir., September 14, 1976); *Matter of Loftin,* 327 So.2d 543 (La.App. 1976); and a state statute providing for the suspension of the licenses of contractors who have been adjudicated bankrupts, *see Grimes v. Hoschler,* 12 Cal.3d 305, 115 Cal. Rptr. 625, 525 P.2d 65 (1974). *Compare Marshall v. District of Columbia Government,* 182 U.S.App.D.C. 105, 559 F.2d 726 (1977) (*Perez* does not proscribe police department's use of bankruptcy as a factor in evaluating applicant's fitness for employment). By contrast, the courts have refused to read *Perez* to proscribe discrimination against bankrupts on the part of purely private entities. *See Girardier v. Webster College,* 563 F.2d 1267 (8th Cir. 1977); *McLellan v. Mississippi Power & Light Co.,* 545 F.2d 919 (5th Cir. 1977) (*en banc*).

Of particular interest here is the Eighth Circuit's decision in *Webster College.* In *Webster College,* the defendant, a private college, refused to provide transcripts to plaintiffs, two former students whose student loans had been discharged in bankruptcy. Relying upon the decision of the Fifth Circuit in *McLellan v. Mississippi Power & Light Co., supra,* the Eighth Circuit refused to extend *Perez* to prohibit private institutions from coercing the repayment of debts which had been discharged in bankruptcy:

> The Bankruptcy Act, as now written, does not prohibit a private college's refusing to furnish transcripts to persons who have received a discharge in bankruptcy of their college loans.

563 F.2d 1276. Implicit in the rationale of the *Webster College* decision is that, while a private college is free to take such recourse, a public university would not be.[6] *See* Concurring Opinion of Bright, J., *id.*, at 1277 (noting the "anomalous result that a state school is obligated to furnish transcripts to a bankrupt former student . . . but a private school is not.")

Since defendant is a public university, we are not bound by the *Webster College* decision; if anything, it supports the result reached by this Court. However, it does not necessarily follow that *Perez* is dispositive of plaintiff's claim.

▮▮▮▮ The state legislation at issue in *Perez* was designed not to protect the state as a creditor, but to protect third parties with unsatisfied tort judgments against

---

**6.** While this Court largely agrees with the Eighth Circuit's conclusion that *Perez* does not proscribe purely private discrimination against bankrupts, it must respectfully disagree with the result reached in the *Webster College* decision. At issue there was not a mere refusal to readmit former students whose student loans had been discharged in bankruptcy, but a refusal to release their transcripts. In concurrence, Judge Bright characterizes the interests at stake as, in effect, future interests which may be withheld for failure of consideration:

> Webster College, which has conferred upon now-bankrupt, former students an education represented by a degree, has taken no steps to penalize appellants in their use of knowledge gained in college . . . Rather,

> Webster College refuses further to enhance the benefits of those degrees by certification of the transcripts. *Id.* at 1277–78.

Surely, however, a student has some sort of a property interest in his transcripts, which reflect time, money and hard work. This Court cannot agree with the *Webster College* Court that even a private entity may withhold the debtor's property because the debt has been discharged in bankruptcy. Just as one might assume that a doctor could not withhold the medical records of a patient whose medical bills had been discharged in bankruptcy, a college· should not be permitted to withhold a student's transcripts.

bankrupts. Here, the state is itself a creditor, and its actions are designed to serve its own ends. On the face of it, it seems unfair to treat a public creditor differently from a private creditor, for both would seem equally justified in refusing to deal with someone who had defaulted on a debt *owed to it* in the past. However, while indeed it may be "anomalous" to treat private creditors differently from public creditors, it is the state—and not private parties—which is limited by the Supremacy Clause. While private parties are bound to observe only the letter of the law, the state may not by its actions "retard, impede, burden, or in any manner control, the operations of the laws . . . enacted by congress." *See McCulloch v. Maryland,* 4 Wheat. 316, 436, 17 U.S. 316, 436, 4 L.Ed. 579 (1819) (Marshall, Ch. J.). There being no explicit provision in the Bankruptcy Act making it unlawful to discriminate against a bankrupt, private entities may lawfully refuse to deal with bankrupts. By contrast, the Supremacy Clause prevents a state from frustrating even the spirit of a federal law. Inasmuch as defendant, both by withholding plaintiff's transcripts and refusing to permit her to register, has transgressed upon the "fresh start" policies of the Bankruptcy Act, this Court must hold such actions violative of the Supremacy Clause.

■ The Court next addresses plaintiff's contention that defendant's actions violate her right to equal protection as guaranteed by the Fourteenth Amendment.[7] Since education is not a fundamental right, and since wealth is not a suspect classification, *see San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), the Court need only determine whether the classification at issue here is reasonably related to a legitimate governmental interest. *See Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). However, on analysis, it is clear

that defendant's actions cannot survive even this less lenient level of scrutiny.

■ The classification employed by Rutgers includes all persons who are more than three months delinquent in their debts to the school. As applied to persons who are not bankrupts, there is little doubt that this classification is legitimate, for the university has a legitimate interest in seeking repayment of valid debts. However, insofar as this classification includes bankrupts, it necessarily runs afoul of the Equal Protection Clause. The state cannot claim a legitimate interest in securing the repayment of loans discharged in bankruptcy, for, as we have already demonstrated, pursuit of such an interest is foreclosed by *Perez.* Moreover, defendant, as a state university, is under an obligation to treat its citizens alike. While it may, of course, discriminate on the basis of reasonable classifications such as academic performance, a citizen's status as a bankrupt is, *per force,* an impermissible criterion. This is not to say that defendant may not in the future validly decline to extend credit to one who has previously discharged his debts in bankruptcy, but it cannot deny a citizen so vital a privilege as an education on the basis of his status as a bankrupt.

■ Finally, plaintiff levels a statutory challenge to defendant's practices, claiming that they violate section 14(f) of the Bankruptcy Act, 11 U.S.C. § 32(f) (Supp.1977), which provides that:

An order of discharge shall—

. . . . .

(2) enjoin all creditors whose debts are discharged from thereafter instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt.

Plaintiff would have the Court equate the phrases "any process" and "action" with the actions which are challenged here. How-

---

7. We reject out of hand defendant's contention that since it acts in a "proprietary" rather than a "governmental" capacity, it should not be regarded as an arm of the state. Rutgers is a state university, created pursuant to N.J.S.A. 18A:65–1 *et seq.* Since, under certain circum-

stances, even private universities have been held to act "under color of state law", *see Braden v. University of Pittsburgh,* 552 F.2d 948 (3rd Cir. 1977) *(en banc),* a fortiori, defendant is bound by the Fourteenth Amendment.

ever, it is clear from the legislative history of this provision, that the sole purpose of this section is to prevent creditors from taking *legal* actions against debtors; it does not proscribe actions which fall short of that. *See Girardier v. Webster College, supra,* at 1272–73; *Wood v. Fiedler,* 548 F.2d 216, 219 (8th Cir. 1977); 1 A Collier, Bankruptcy ¶ 14.69 (14th Ed.1976).

█ In holding defendant's practices unconstitutional, this Court in no way condones the abuse of the bankruptcy laws by students who, with little or no assets, take out loans with one eye on the bankruptcy laws and with no present intention to repay. However, as to students who have already discharged their student loans in bankruptcy—who, it should be noted, have undergone bankruptcy proceedings where the creditor has been given every opportunity to oppose the discharge and the Bankruptcy Judge was empowered to inquire into any allegations of fraud[8]—this Court holds that the state may neither withhold the fruits of their prior education, nor thwart them in their attempts to seek a "fresh start" through a college education.

---

8. This power has been further buttressed by Congress precisely in the area of student loans. *See* 20 U.S.C. § 1087–3 (Supp.1977) providing that, except in cases of hardship, federally insured loans may not be discharged in bankruptcy until five years after the time for repayment has commenced.