**In the Matter of Calvin HEATH and Michelle R. Heath, Debtors.**

**Bankruptcy No. 79 B 39275.**

United States Bankruptcy Court, N. D. Illinois, E. D.

April 7, 1980.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

The movant, Calvin Heath (Heath), together with his wife, Michelle R. Heath, filed a Chapter 13 plan on October 11, 1979. The plan, which scheduled an unpaid student loan owed to the respondent, University of Illinois, Chicago Campus (University), was confirmed by this Court on January 21, 1980. Subsequent to the filing of the 10% composition plan, Heath requested the University to provide him with a transcript of his academic record. The University refused to issue a transcript to Heath until such time as the prepetition debt owed to the University is paid in full. Heath now moves this Court to compel the University to relinquish the requested transcript.

In support of his motion, Heath contends that the University's action: 1. discriminates against Heath as a debtor in violation of 11 U.S.C. sec. 525; 2. contravenes the automatic stay of 11 U.S.C. sec. 362; and 3. deprives him of property in violation of 11 U.S.C. sec. 1327. Insofar as this Court agrees with Heath's contentions relating to sections 525 and 362, it is unnecessary to determine whether Heath has a property interest in the transcript which would be subject to section 1327.

Before addressing Heath's arguments, it should be stressed that the University did not file an objection to confirmation of the debtor's plan as not having been "proposed in good faith" (Sec. 1325(a)); nor is it asserted that the debtor does not really need the relief provided by Chapter 13 and that he has filed the petition only to seek improper advantage over the University under the section 362 automatic stay or merely to gain a discharge of an otherwise non-dischargeable debt.

Had allegations of bad faith been asserted, a hearing on the issue would have been necessary before entry of the order confirming plan. But since the issue of bad faith or dischargeability has not been raised, it is appropriate to proceed directly to a discussion of sections 525 and 362.

I. *Application of 11 U.S.C. sec. 525*:

By enacting 11 U.S.C. sec. 525 Congress intended to codify the Supreme Court's decision in *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). House Report No. 95–595, 95th Cong., 1st Sess. (1977) 366–7; Senate Report No. 95–989, 95th Cong., 2nd Sess. (1978) 81, U.S.Code Cong. & Admin.News 1978, p. 5787. In *Perez*, two bankrupts challenged an Arizona statute which provided for the suspension of an individual's drivers license if there existed an outstanding automobile collision judgment against the individual. The statute was expressly applicable to outstanding judgments which had been discharged in bankruptcy. Finding that the statute in issue was intended to provide a mechanism for the collection of discharged tort judgments, the Supreme Court found the Arizona statute in direct conflict with the Congressional policy to give debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." 402 U.S. 637 at 643, 648, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233; quoting from *Local Loan Co. v. Hunt*, 292 U.S. 234 at 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). Holding that this irreconcilable conflict was inconsistent with the Supremacy Clause, the Court struck down the Arizona statute. 402 U.S. 637 at 656, 91 S.Ct. 1704 at 1714, 29 L.Ed.2d 233.

The language of section 525 and its legislative history unequivocally indicate that the holding in *Perez* should not be limited to its facts. Rather, the prohibition of state discrimination against debtors in a manner inconsistent with bankruptcy policy is to be extended by the Courts. Thus, whereas *Perez* was solely concerned with a state statute, section 525 explicitly proscribes various forms of *discretionary* action by *any* governmental unit. Furthermore, the legislative history of section 525 invites the Courts to extend the list of prohibited activities enumerated in section 525 whenever state action appears to contravene bankruptcy policy:

> In addition, the section is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination. The courts have been developing the Perez rule. This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions, such as a State bar association or a medical society, or by other organizations that can seriously affect the debtors' livelihood or fresh start, such as exclusion from a union on the basis of discharge of a debt to the union's credit union . . . The courts will continue to mark the contours of the anti-discrimination provision in pursuit of sound bankruptcy policy. House Report No. 95–595, 95th Cong., 1st Sess. (1977) 366–7; Senate

Report No. 95–989, 95th Cong., 2d Sess. (1978) 81, U.S.Code Cong. & Admin.News 1978, p. 5867.

In the instant case there is no question that the University, a state college, is subject to section 525. It is apparent from the legislative history quoted above that section 525 extends to action by quasi-governmental units.[1] Consequently, the only issue to be resolved is whether the University's action in withholding Heath's transcript is inconsistent with the Bankruptcy Code.

Obviously, Heath's transcript, as such, has no intrinsic value to the University.[2] Thus, the Court finds that the University is withholding Heath's transcript for the sole purpose of compelling Heath to pay a prepetition debt, which debt may ultimately be discharged in Heath's Chapter 13 proceeding.[3] By holding Heath's transcript hostage, the University seeks to circumvent Heath's composition plan, which includes the debt owed to the University and has been confirmed by this Court. In this context, the holding in *Handsome v. State University of New Jersey*, 445 F.Supp. 1362 (D.C.1978), is precisely on point. The defendant in *Handsome*, a state university, refused to provide a transcript to the plaintiff, a former student, until the plaintiff paid off a student loan owed to the defendant. The defendant maintained this position despite the fact that the plaintiff had obtained a discharge of the student loan in a Chapter 7 proceeding. Finding that the defendant's action transgressed upon the "fresh start" provision of the Bankruptcy Act, the Court, relying on *Perez*, held the defendant's conduct to be violative of the Supremacy Clause. 445 F.Supp. 1362 at 1367; *accord, Lee v. Board of Higher Education in City of New York*, 1 B.R. 781 at 787–8 (D.C.1979).

The University in the instant case seeks to distinguish *Handsome* on two grounds. First, the University contends that *Handsome* is only applicable after the debtor has been granted a discharge. Although Heath has submitted a composition plan, which has been confirmed by this Court, he cannot obtain a discharge until that plan is complied with. Second, the University contends that its action has not impaired Heath's fresh start. Thus, the strictures of *Perez* as well as those of *Handsome* are not applicable to the University's action.

Neither of these arguments is persuasive. The proscriptions of section 525 are applicable to discriminatory actions prompted by a debtor's recourse to the protection of the Bankruptcy laws regardless of whether the debtor has obtained a discharge. The legislative history to section 525 is unambiguous in this request:

> The prohibition extends only to discrimination or other action based solely on the basis of the bankruptcy, on the basis of insolvency before or during bankruptcy *prior to a determination of discharge*, or on the basis of nonpayment of a debt discharged in the bankruptcy case. House Report No. 95–595, 95th Cong., 1st Sess. (1977) 366–7; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 81, U.S.Code Cong. & Admin.News 1978, p. 5867. (Emphasis added).

1. As originally proposed by the Bankruptcy Commission, S. 236, 94th Cong., 1st Sess. Sec. 4–508 (1975), the section would have been extended to action by private parties. As enacted, the statute is certainly no bar to Court extension of the no discrimination rule to private parties or groups.

2. This finding obviates the need to explore the impact of sections 362 and 525 on a creditor's conduct when the creditor withholds property for the purpose, inter alia, of protecting a valuable property interest which the creditor possesses in the specific property.

3. In the University's Memorandum in Opposition to Debtor's Motion for Order (sic) Compelling Production of Transcript of Educational Credits, the University contends that the use of a non-judicial remedy, such as withholding transcripts, to induce the debtor to pay off a prepetition debt does not violate the automatic stay provision (Sec. 362) of the Bankruptcy Code. This argument will be considered in Part II of this decision. What is important at this point, however, is that the University, by resorting to this argument, implicitly concedes that it is withholding the transcript solely for the purpose of inducing Heath to pay off his prepetition debt.

Indeed, it would be anomalous to grant a debtor protection from discriminatory actions in a liquidation proceeding and deny him the same protection in a rehabilitation (Chapter 13) proceeding.

The University's second contention is more subtle. By arguing that its actions have not impaired Heath's fresh start,[4] the University implicitly assumes that discriminatory actions must impair a debtor's fresh start in order to fall within the scope of section 525.

This assumption is erroneous. In *Perez* the Supreme Court did not predicate its decision on a finding that the Arizona statute was in conflict with specific "fresh start" provisions of Chapter 7. Rather, the Court found that the Arizona statute was in conflict with the general policies supporting the Bankruptcy Act, *one* of which was Congress's intent to allow debtors to proceed, subsequent to Bankruptcy, unhampered by preexisting debts. 402 U.S. 637 at 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233. Consistent with this reasoning, section 525 generally prohibits discriminatory action which tends to frustrate Bankruptcy policy as a *whole*.

Insofar as section 525 protects a debtor from discrimination, no legitimate distinction can be drawn between the fresh start of straight bankruptcy and the rehabilitation of a Chapter 13 or Chapter 11 debtor. In the former case, the end result is the creation of a new life, while in the latter the end result is, or should be, a continuation of the debtor's life, albeit freed from and unhampered by the financial burdens of his past. A denial of protection from discriminatory action in the latter case could only serve to dissuade debtors from pursuing rehabilitation plans. Obviously, such a result would clearly conflict with Congress's intent to encourage debtor rehabilitation. Therefore, the Court concludes not only that section 525 applies equally to fresh start (liquidation) and rehabilitation (plans) but that case precedent involving

the fresh start principle should be applied with equal force to the other statutory forms of debtor relief.

This Court has confirmed a composition plan submitted by Heath, the viability of which is, to a large extent, contingent upon Heath's ability to secure and maintain employment. This, in turn, is dependent upon the availability of the debtor's college transcript. Thus, the University's conduct, if allowed to persist, will tend to preclude Heath from fulfilling his obligation under the confirmed composition plan. It is beyond argument, therefore, that the University's conduct frustrates the policies underlying Chapter 13 and is, consequently, violative of section 525.

## II.   *Application of 11 U.S.C. sec. 362* :

Heath maintains that the University's conduct amounts to an act to collect a debt in violation of the automatic stay set out in section 362. The University, in turn, maintains, citing *Girardier v. Webster College*, 563 F.2d 1267 (8th Cir. 1977) and *Handsome, supra*, that the automatic stay provision applies only to the initiation of formal legal proceedings for the collection of prepetition debts. Since the withholding of a transcript is simply an informal means of inducing Heath to pay the prepetition debt, such withholding does not fall within the scope of the automatic stay.

Although the University's reading of *Girardier* and *Handsome* on this issue is correct, both of these cases were decided prior to the enactment of the Bankruptcy Code, effective October 1, 1979. Section 362 of the Code provides:

(a)(6) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

---

4. The term "fresh start" is normally employed as a term of art which refers collectively to those Chapter 7 provisions which specify forms of post-discharge relief. As such the term is usually not employed in relation to Chapter 13

post-confirmation, relief provisions. Inasmuch as Heath is a Chapter 13 debtor, the University's action, while it may interfere with his rehabilitation, cannot technically impair his fresh start.

The legislative history to section 362(a)(6) clearly indicates that Congress intended to prohibit creditors from collecting a prepetition debt in *any* manner:

> Paragraph (6) prevents creditors from attempting *in any way* to collect a prepetition debt. Creditors in consumer cases occasionally telephone debtors to encourage repayment in spite of bankruptcy. Inexperienced, frightened, or ill-counseled debtors may succumb to suggestions to repay notwithstanding their bankruptcy. This provision prevents evasion of the purpose of the bankruptcy laws by sophisticated creditors. House Report No. 95–595, 95th Cong., 1st Sess. (1977) 340–2; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 49–51, U.S.Code Cong. & Admin.News 1978, p. 5836. (Emphasis added).

Thus, to the extent that *Girardier* and *Handsome* limited the automatic stay to legal proceedings for debt collection, they have been legislatively overruled.

As stated earlier in this opinion, it is the opinion of the Court that the sole purpose behind the University's conduct in withholding Heath's transcript is the collection of Heath's prepetition debt. As such, the University's conduct undeniably falls within the scope of section 362(a)(6) and clearly violates the automatic stay.

Therefore, University of Illinois Chicago Campus is hereby ordered to provide Calvin Heath with a transcript of his academic record upon receipt of the customary processing fee.