Hon. Clifton R. Wharton, Jr. Chancellor State University of New York
This is in response to the requests made by your Counsel, Sanford H. Levine, as to whether two recent Federal District Court decisions mandate reexamination of that part of our November 22, 1977 opinion (1977 Ops Atty Gen 74) stating that the State University has the authority to withhold the transcript of a student loan debtor who defaulted on his repayment obligations but subsequently received a discharge in bankruptcy from such loan.
The Federal District Court decisions that you referred to (Handsome vRutgers Univ., 445 F. Supp. 1362 [DNJ, 1978]; Lee v Board of Higher Ed.,
48 USLW 2424 [SDNY, 11/21/79]), both issued subsequent to our opinion, do, indeed, hold to the contrary.
In addition, a new Bankruptcy Act (Pub.L. 95-598) became effective on October 1, 1979 (id., § 402). Section 524, covering the effect of discharges in bankruptcy, is significantly changed from the former section 14 (f) (11 U.S.C. § 524, formerly 11 U.S.C. § 14 [f]). For this reason alone, reconsideration of our 1977 opinion is in order.
The old section 14 (f) provided:
"An order of discharge shall —
* * *
 (2) enjoin all creditors whose debts are discharged from thereafter instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt."
The new section 524 (a) provides that a discharge under the Bankruptcy Act:
 "(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived; * * *". (Emphasis added.)
Commenting on this change, the Sixth Circuit Court of Appeals, inRyan v Ohio Edison Co., 611 F.2d 1170, 1175 (12/27/79), stated:
 "The new Bankruptcy Code now provides in 11 U.S.C. § 524 (a) that any action, any process, or any act to collect a debt discharged in bankruptcy is prohibited by the discharge order. The revision notes state that the section prohibits `any act, including telephone calls, letters, and personal contacts, to collect, recover, or offset any discharged debt.' * * *
 "The legislative history of the new Code discloses that this prohibition is new. The House Report, Senate Report, and Revision Notes all indicate that section 14 was expanded to include informal activities. See S.R. 95-989, 5 U.S. Code Cong. Admin. News, 95th Cong., 2d Session, at pp. 5787, 5866-67 (1978); H.R. 95-595, 5 U.S. Code Cong. Admin. News, 95th Cong., 2d Session, at pp. 5963, 6321-22 (1978)." (Emphasis added.)
That the congressional intent in enacting the new Bankruptcy Act was to bar indirect, as well as direct, attempts to collect or recover a discharged debt further appears from the "Historical and Revision Notes" following section 524 (a):
 "Notes of Committee on the Judiciary, Senate Report No. 95-989. Subsection (a) specifies that a discharge in a bankruptcy case * * * operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, including telephone calls, letters, and personal contacts, to collect, recover, or offset any discharged debt as a personal liability of the debtor, or from property of the debtor, whether or not the debtor has waived discharge of the debt involved. The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts. This paragraph has been expanded over a comparable provision in Bankruptcy Act § 14f [former section 32 (f) of this title] to cover any act to collect, such as dunning by telephone or letter, or indirectly through friends, relatives, or employers, harassment, threats of repossession, and the like. The change is consonant with the new policy forbidding binding reaffirmation agreements under proposed 11 U.S.C. § 524 (b), and is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it. In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that." (Emphasis added.)
We are aware that the student loan debtor referred to in your request for our opinion was granted his discharge in bankruptcy on September 14, 1979, prior to the effective date of the new Bankruptcy Act. However, there is no indication in the new Act that the "injunction against commencement or continuation" of indirect efforts to recover a discharged debt contained in section 524 (a) (2) is applicable only to debts discharged in bankruptcy subsequent to its October 1, 1979 effective date. Rather, the implication in the "Historical and Revision Notes" quoted above is that the congressional purpose was to bar all indirect collection efforts commenced or continued after October 1, 1979. This is precisely what was held in the Lee case, supra, which involved attempted withholding, after October 1, 1979, of the transcript of a student loan debtor whose debt had been discharged in bankruptcy in 1978.
From the foregoing, it must be concluded, as did the Federal District Court in the Lee case, supra, — the only reported decision on the subject issued subsequent to the effective date of section 524 (a), — that section 524 (a) of the new Bankruptcy Act and the Supremacy Clause of the US Constitution (Cons, Art VI, Cl 2), prohibit the State University from withholding the transcript of a delinquent student debtor whose loan or any other obligation to the University has been discharged in bankruptcy.
Agencies of the State may not enter into formal contracts with each other but may execute interagency memoranda of understanding limited to matters of substance and omitting standard provisions normally included in formal contracts.
Dated: June 9, 1980
Hon. Clifton R. Wharton, Jr. Chancellor State University of New York
This is in response to the request made by your Counsel, Sanford H. Levine, concerning the propriety of a provision in a contract between two State agencies wherein one agency agrees to "indemnify" the other agency from liability for loss or damage arising out of the first agency's negligence. In our view, your request raises the basic question whether two agencies of the State can enter into "contracts" with each other. We conclude that they cannot.
It is elementary contract law that a person cannot contract with himself, that it takes two to make a contract. Indeed, this is so elementary that it is difficult to find a definitive judicial statement in support of this elementary rule of contract law. Both Williston (Contracts [3d Ed.] Vol. 1, §§ 1, 2, 2A) and Corbin (Contracts, Vol. 1, §§ 3 and 9) define contracts and agreements, using the words "two or more" parties or persons, but do not define persons or parties except in relation to competency, such as minority status or mental incapacity. Professor Corbin does, however, discuss the dangers involved in relying on a simple statement that a person cannot contract with himself, using as an example an agreement between an unincorporated association and one of its members (Vol. 1, § 55). Since he does not mention corporations, one may assume that he recognized that a corporation is one "person" and that a stockholder or employee is a second person.
There is at least one case that addresses the problem directly. The City and County of San Francisco had a construction program known as the Hetch Hetchy Water Project. One department of the City was known as the Hetch Hetchy Project. The City put out one portion of the project for competitive bids. The Project was the low bidder and was awarded the "contract". The supplier of the cement to the Project refused to pay the state gross receipts tax on its sales because sales of products used for the performance of a contract on public works were exempt from the tax. The State of California took the position that there was no contract since the City could not contract with itself. In Yosemite PortlandCement Corp. v. State Board of Equalization (138 P.2d 39, Dist Ct of App [1943]), the Court observed:
 "There can be no doubt that the Hetch Hetchy Project is not a separate corporate entity. There can also be no doubt that under general contract law it is of the essence of a contract that there be two contracting parties of separate identity. For that reason the transaction between the Project and the City was not a contract within the general meaning of that term." (p 40)
The Court concluded, however, that the transaction was one that the Legislature intended to exempt when it used the word "contract".
Just as two State agencies cannot enter into "contracts" because there is only one entity — the State — so one agency cannot agree to "indemnify" another agency because the State can hardly indemnify itself.
Unquestionably, New York State agencies, departments, divisions, offices and other units can enter into "agreements" with each other, but they are not contracts in the context of the law of contracts. They are interagency memoranda of understanding about who is to do what, whose budget is to support what expenditures, who is to report to whom about the progress of the undertaking, who is to get the final product, if there is one, and the like. In the context of indemnification, an interagency memorandum of understanding could specify whose budget was to be charged in the event of a successful claim against the State. In case of disagreement, the units could hardly sue each other; the dispute would have to be settled inside the State government.
This opinion is limited to those entities of the State that have not been created as separate legal entities. Many, but not necessarily all, public authorities and public benefit corporations created by the State are separate entities with which the State can contract. The State may, of course, enter into formal contracts with municipalities and other local governmental entities that have the power to enter into contracts. (We note that the State University itself is a "corporation" [Education Law, § 352], but has been held to be "an integral part of the government of the State and when it is sued the State is the real party."State University of New York v Syracuse University, 285 App. Div. 59 [3d Dept, 1954].) An agency proposing to enter into an "agreement" with an authority or a corporation may have to determine whether a contract or an interagency memorandum of understanding is the appropriate document to use.
We conclude that agencies of the State may not enter into formal contracts with each other but may enter into interagency memoranda of understanding. Such memoranda should deal only with matters of substance and should not contain standard provisions normally used in formal contracts. We assume that the Director of the Budget will issue such instructions as are necessary to assure that required matters of fiscal substance are covered by interagency memoranda of understanding and that required fiscal approvals of the memoranda are obtained.