In re Nelson P. PARRAWAY and Memory M. Parraway, Plaintiffs/Appellees,

v.

ANDREWS UNIVERSITY, Defendant/Appellant.

In the Matter of Nelson P. PARRAWAY and Memory M. Parraway, Plaintiffs,

v.

ANDREWS UNIVERSITY, Defendant.

Nos. K 83–460, K 83–526.

United States District Court, W.D. Michigan, S.D.

Jan. 6, 1984.

---

Steven Rayman, Kalamazoo, Mich., for plaintiffs.

Jaye Bergamini, Lansing, Mich., for defendant.

## OPINION

ENSLEN, District Judge.

In this bankruptcy appeal, the issues are whether a college transcript may serve as collateral for a security interest under Article 9 of the Michigan Uniform Commercial Code, M.C.L.A. §§ 440.9101, *et seq.*, and whether a college's refusal to turn over academic transcripts to debtors who have received their bankruptcy discharge violates 11 U.S.C. § 524.

### I.

Nelson and Memory Parraway (Plaintiffs) were formerly students at Andrews University in Berrien Springs, Michigan. Mr. Parraway attended the college during the 1978 fall semester while Mrs. Parraway was enrolled from October, 1978 to May, 1981. On or about June 16, 1983, Plaintiffs filed a joint bankruptcy petition pursuant to Chapter 7 of the Bankruptcy Code. On June 15, 1983, Plaintiffs, subsequent to receiving their bankruptcy discharge, filed a Complaint against Defendant alleging that it had infringed on the rights accorded to them by the discharge in refusing to release their academic transcripts until their

debt was fully paid.[1] On August 23, 1983, the bankruptcy court ordered Defendant to release the transcripts to Plaintiffs. The bankruptcy court refused to stay its order pending appeal and Defendant petitioned this Court for a stay, asserting that unless a stay was granted, Plaintiffs would receive their transcripts thus rendering the lawsuit moot. This Court refused to stay the order with respect to Mr. Parraway on September 29, 1983. Defendant thereafter moved the Court to reconsider its Order.

At this stage in the proceeding, Defendant only requests that this Court stay the bankruptcy court's order. However, since the Court has considered the issues which Defendant set forth in its Statement of Issues on Appeal this Opinion will thus serve as the Court's final decision in these cases.

## II.

■ Article 9 of the Michigan Uniform Commercial Code, MCLA §§ 440.9109, *et seq.*, is the applicable law regarding the creation of consensual security interests in personal property. MCLA § 440.9102(1) defines the scope of Article 9 as follows:

(1) Except as otherwise provided in section 9104 on excluded transactions, this article applies:

(a) To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts; and also

(b) To any sale of accounts or chattel paper.

It is clear from Section 1 of the Official U.C.C. Comment to MCLA § 440.9102 that Article 9 applies only in those situations in which the parties intend that an item of personal property serve as collateral:

Except for sales of accounts, contract rights and chattel paper, the principal test whether the transaction comes under

this Article is: is the transaction intended to have effect of security?

Security interests are ordinarily given in property for which there is a recognizable market and which has a value to persons other than the owner. One leading commentator has noted that Article 9 was drafted only to "regulate certain well-known and institutionalized types of financing transactions." 1 G. Gilmore, *Security Interest in Personal Property*, § 11.1 at 336–37 (1965). There is clearly no recognized market for college transcripts similar to that which exists for consumer goods, farm products, securities or other property which ordinarily serves as collateral.

■ Defendant argues that certain provisions from its 1978–79 catalog show the parties intended to create a security interest in Plaintiffs' transcripts. According to these provisions transcripts would not be issued to students with unpaid accounts. Plaintiffs also testified that they had agreed to be bound by the college's regulations. Defendant asserts that this indicates the parties' intention to create a security interest in the transcripts and further argues that all requirements of attachment of the security interest under MCLA § 440.9203 were met.

I find that these regulations were nothing more than a contemporary tactic adopted to compel students to pay their debts. To construe this as evidence of either a security agreement or the parties' intention to create a security agreement leads "security" onto ice so thin that it collapses the ice .. The catalog clearly does not read like an ordinary security agreement. Moreover, statements made in Defendant's brief imply that it never intended the Plaintiffs' transcripts to serve as collateral when they enrolled. At pages 3–4 of its brief, Defendant states:

Andrews University is clearly a secured creditor, although they did not fully understand the nature of their security un-

---

1. Defendant does not assert that Plaintiffs' debts were nondischargeable student loans under 11 U.S.C. § 523(a)(8).

til they consulted counsel regarding the case at bar.

■ Defendant's characterization of the transcript as a "general intangible" further underscores the error of its argument.[2] Section 440.9106 defines a general intangible as follows:

"General intangibles" means any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money.

The Official U.C.C. Comment § 440.9106 contains the following discussion of general intangibles:

The term "general intangibles" brings under this Article miscellaneous types of contractual rights and other personal property which are used or may become customarily used as commercial security.

As with other categories of personal property which Article 9 delineates, the category of "general intangibles" is comprised of certain items of personalty which are used commercially as security. As noted heretofore, a college transcript is clearly not the sort of property used as commercial security and cannot classified as a "general intangible".

### III.

■ Paragraph 11 U.S.C. § 524(a)(2) provides that a creditor may not take any action to collect a debt discharged under 11 U.S.C. § 727:

(a) A discharge in a case under this title—

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived....

---

**2.** Article 9 of the Michigan Uniform Commercial Code sets forth various categories of collateral in which a security interest may be created. In order to "perfect" a security interest, it is necessary for the secured party to file a financing statement at the location designated by M.C.

The legislative history expressly states that this provision was intended to expand upon the protection provided by the old Bankruptcy Act by enjoining *any* action—not only legal action—to collect any discharged debts. *See,* House Report No. 95–595, 95th Cong., 1st Sess. (1977) 365–66, U.S.Code Cong. & Admin.News 1978, p. 5787.

■ I find that Defendant's refusal to release Plaintiffs' transcripts, which is essentially an effort to collect upon a discharged debt, violates 11 U.S.C. § 524(a)(2). Defendant's characterization of its relationship with Plaintiff as that of a secured party to a debtor is unpersuasive. Courts which have been faced with the same issue in similar circumstances have held that a college's refusal to release transcripts violates either the automatic stay provisions set forth at 11 U.S.C. § 362(a)(6) or the prohibition against discriminatory treatment of debtors by governmental entities set forth at 11 U.S.C. § 525. *See, In re Ware,* 9 B.R. 24, 7 BCD 373 (Bkrtcy.W.D. Mo.1981) (private college's refusal to provide Chapter 13 debtor with academic transcript prior to discharge and pending full payment of debt violates 11 U.S.C. § 362(a)(6)); *In re Lanford,* 10 B.R. 132 (Bkrtcy.D.Minn.1981) (private college's refusal to provide Chapter 13 debtors with academic transcript prior to discharge violates 11 U.S.C. §§ 362(a)(6)); *In re Howren,* 10 B.R. 303, 7 BCD 43 (Bkrtcy.D.Kan. 1980) (state university's refusal to provide Chapter 7 debtor with academic transcript prior to discharge and pending full payment of debt violates 11 U.S.C. §§ 362(a)(6) and 525); *In re Heath,* 3 B.R. 351, 6 BCD 169 (Bkrtcy.N.D.Ill.1980) (state university's refusal to provide Chapter 13 debtor with academic transcript prior to discharge and pending full payment of debt violates 11 U.S.C. §§ 362(a)(6) and 525). Although it is true that the debtors in the aforementioned cases demanded their transcripts prior to

L.A. § 440.9401(1). The proper location to file the financing statement depends on the category of collateral in question. For example, the Office of the Secretary of State is the designated place to file a financing statement on general intangibles.

**320**

receiving their discharge, while the Plaintiffs made a similar demand after discharge, this factual distinction is insignificant in light of the express language of 11 U.S.C. § 524(a)(2) and its legislative history.

Prior to the enactment of the new Bankruptcy Code of 1978, there was authority for the proposition that Section 14(f)(2) of the old Bankruptcy Act (11 U.S.C. § 32(f)(2) (1970)) did not prevent a college from withholding a bankrupt's academic transcript after discharge of his student loans since that section only proscribed the use of legal process to collect discharged debts. *See, Girardier v. Webster College,* 563 F.2d 1267 (CA 8 1977); *Handsome v. Rutgers University, Etc.,* 445 F.Supp. 1362 (D.N.J. 1978). This line of authority was legislatively overruled by 11 U.S.C. § 524(a)(2) which extended the injunction against creditor efforts to collect discharged debts to all actions, not simply those involving legal process. *See, Ryan v. Ohio Edison Co.,* 611 F.2d 1170 (CA 6 1979).

Accordingly, an order will be entered ordering Defendant to release Plaintiffs' academic transcripts upon payment of the customary processing fees.