**In re Byron E. KOTTER, Hazel Kotter and Lloyd Kotter, dba Lucky Lane Farms, a partnership, Debtors.**

**Byron E. KOTTER, Hazel Kotter and Lloyd K. Kotter, d/b/a Lucky Lane Farms, Petitioners,**

**v.**

**UNITED STATES DEPARTMENT OF AGRICULTURE, Agricultural Stabilization and Conservation Service, and Commodity Credit Corporation, Respondents.**

**Bankruptcy No. 184–02533.**

United States Bankruptcy Court, C.D. Illinois.

March 4, 1986.

Barry M. Barash, Galesburg, Ill., for debtors/petitioners.

Lee Smith, Asst. U.S. Atty., Peoria, Ill., for respondents.

## DECISION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

This matter comes on to be heard on the Petition for Rule to Show Cause filed by the Debtors, who are farmers, against the Respondents, The United States Department of Agriculture, Agricultural Stabilization and Conservation Service, and the Commodity Credit Corporation. The petition is filed under Section 525 of the Bankruptcy Code.

The Respondents are responsible for operating various Agricultural Price Support Programs. One such program is commonly known as the "on-farm storage" program. Under this program grain is stored on the farmer's farm and the farmer is eligible to borrow against the stored grain, sealing the stored grain as collateral for the loan. By participating in the program, the farmer obtains a higher price for the sealed grain than he could obtain through a sale of the grain in the public market. When the loan becomes due, the farmer has the right to have the sealed grain used to repay the loan. In addition, the farmer is eligible for a grain storage program which currently pays 26½¢ a bushel per year for storage. Another program available to farmers is what is commonly called "warehouse stored" loans. This program is not as attractive to the farmers, as it involves off-farm storage and costs approximately 15¢ to 20¢ per bushel to transport the grain from the farmer's farm to the warehouse site. Yet another program available to farmers is the "purchase agreement" program. It, too, is not as attractive to the farmers as the "on-farm storage" program.

In 1983, the Debtors participated in the "on-farm storage" program, borrowing $150,000.00 and sealing grain of comparable value in their on-farm storage as collateral for the loan. Subsequently, it was determined that there was a $90,000.00 shortage in the collateral. With one exception, the Debtors could not specifically explain what caused the shortage. In general, the Debtors believe the shortage was due to shrinkage, insect infestation, and spoilage. The one exception is that the Debtors admit that approximately seven thousand bushels of grain was improperly removed from storage and used to feed Debtors' hogs. The seven thousand bushels had a value of approximately $11,550.00.

In 1984 the Debtors did not request to participate in any of the Respondent's programs. On December 21, 1984, the Debtors filed a petition for an arrangement pursuant to Chapter 11 of the Bankruptcy Code. In 1985 the Debtors again applied to participate in the "on-farm storage" program. This application was denied. The Debtors elected not to participate in the other programs offered by the Respondents.

The Debtors then filed the Petition for Rule to Show Cause alleging they were eligible to participate in the "on-farm storage" program and the Respondents denied them access to the program because they had filed a petition for an arrangement under Chapter 11 of the Bankruptcy Code, which denial constitutes discrimination in violation of 11 USC § 525(a).

Section 525(a) of the Bankruptcy Code provides in part as follows:

"A governmental unit may not deny ... a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against ... a person that is or has been a debtor under this title ..., has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title ..."

It is the position of the respondents that the Debtors were denied participation in the "on-farm storage" program, not because of the filing of the Chapter 11 proceeding but because of the shortage of collateral which occurred in 1983 and the provisions of the Regulations applicable to the various programs which are found in 7

CFR. Ch. XIV, § 1421.1 et seq., in particular, § 1421.3(e) which provides as follows:

"(e) Approval by county committee. If a producer has been convicted of a criminal act, or has made a misrepresentation, in connection with any price support program, or has unlawfully disposed of any loan collateral, or if a county committee has had difficulty in settling a loan with the producer because of failure to protect properly the mortgaged commodity, or for other reasonable grounds, the producer may be denied price support until the county committee is satisfied that both the producer and the commodity offered for price support meet the eligibility requirements of the program, and that CCC will be fully protected against any possible loss other than a loss assumed by CCC under the regulations in this subpart."

And the regulations of the local office which provide as follows:

"A. *County Office.* County Office shall refer cases to COC before approving a farm-stored loan when an otherwise eligible producer has:

1 Been convicted of a criminal act in connection with a Price Support Program.

2 Made a misrepresentation in connection with a Price Support Program.

3 Unlawfully disposed of CCC loan collateral.

4 Caused the County Office difficulty in settling under a previous Price Support Program.

B. *COC.* COC shall approve a loan only when satisfied that CCC's interests are fully protected."

Section 525(a) codifies the Supreme Court's decision in *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), and is designed to prevent governmental units from frustrating the fresh start policy of the Bankruptcy Code. The discriminatory acts set forth in § 525(a) are not intended to be exhausted, nor does the listing prohibit the creditor from considering other factors such as future financial responsibility or ability in awarding the

desired grant. Section 525 is intended to protect debtors from discriminatory treatment based solely on past financial difficulties. See *3 Collier on Bankruptcy,* ¶ 525.-01, ¶ 525.02.

Legislative history indicates that the prohibition against discriminatory treatment does not affect decisions to grant credit to the debtor since future financial responsibility may be taken into account by a creditor. *3 Collier on Bankruptcy,* § 525.02 at 525–3, –4 (15th ed. 1982). See, S.Rep. No. 95–989, 9(5)th Cong., 2nd Sess. 81 (1978); H.Rep. No. 95–595, 2nd Sess. 367 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. In *In re Richardson,* 27 B.R. 560, 8 C.B.C.2d 79, the court held that § 525(a) does not preclude a student loan agency from considering the debtor's default on, and subsequent discharge of, a prior student loan, to assess his future financial responsibility in granting him another student loan, and in so holding, stated:

"Among those cases applying the principles of *Perez, supra,* and its codification in Section 525, the most similar to the case at hand are those decisions addressing the withholding of transcripts to a debtor whose student loans have been discharged in bankruptcy. *Handsome v. Rutgers University, supra; In re Heath, supra* [3 B.R. 351, 1 C.B.C. 736]; *Lee v. Board of Higher Education,* 1 B.R. 781 (S.D.N.Y.1979). While these decisions have uniformly held that a state university may not withhold transcripts under such circumstances, the Court in *Handsome v. Rutgers University, supra,* was careful to note, 'This is not to say that defendant [Rutgers University] may not in the future validly decline to extend credit to one who has previously discharged his debts in bankruptcy ...' 445 F.Supp. at 1362."

In *Perez v. Campbell, supra,* the Supreme Court found the Arizona Financial Responsibility Act, which required a judgment debtor to both satisfy the judgment, regardless of a discharge in bankruptcy, and provide proof of financial responsibility, was invalid under the supremacy clause

of the U.S. Constitution as being in conflict with § 17 of the Bankruptcy Act.

In subsequent cases the courts have sought to determine if the statute or regulation in question is directed in a discriminatory manner solely at those individuals who had filed bankruptcy or whether the statute or regulation in question is applied, in a non discriminatory manner, uniformly against all individuals, regardless of whether they have filed bankruptcy.

In *Henry v. Heyison*, 1 C.B.C.2d 552, the court held a Pennsylvania statute that required a bankrupt to insure herself against future motor vehicle tort indebtedness without requiring the same insurance protection for a person not filing a bankruptcy proceeding to be discriminatory in violation of § 525(a). However, *In the Matter of Cerny*, 17 B.R. 221, 5 C.B.C.2d 1545, the court found that where the financial responsibility laws were applied to debtors and non debtors alike there was no violation of § 525(a).

The regulations, relied upon by the Respondents, on their face, do not indicate that they discriminate in the manner prohibited by § 525(a). Nor did the Debtors present evidence to prove that a debtor, with substantial losses of collateral associated with a previous loan, who had not taken bankruptcy would be permitted to participate in a program, while debtors with the same substantial losses of collateral associated with a previous loan who had taken bankruptcy, would not be permitted to participate.

At the hearing on the Petition for Rule to Show Cause, one of the debtors, Lloyd Kotter, testified that application to participate in the "on-farm storage" program for 1985 had been made and had been rejected because of what he had been told were difficulties encountered in settling accounts of previous farm loans, and that the rejection was evidenced by a letter to him from the Respondents dated November 15, 1985, which stated in part as follows:

"The County Committee has stated they will not approve any request for farm stored loans because of difficulty encountered in settling accounts of previous farm loans."

The letter goes on to indicate that the Debtors would be approved for "warehouse stored loans" and/or "purchase agreements".

Upon cross examination and redirect examination, the debtor, Lloyd Kotter, testified that when the Debtors participated in the program in 1983 there was a shortage of collateral of approximately $90,000.00, and that the shortage could be attributed, in general, to shrinkage, insect infestation, and spoilage, and specifically, to Debtors' improper removal of grain from storage for use as feed.

The Respondents' representative testified that the request for participation was denied pursuant to the Respondents' regulations cited above and because of the approximate $90,000.00 shortage in collateral experienced with the 1983 loan.

I, THEREFORE, FIND:

1. The Debtors were seeking credit from the Respondents, and the Respondents, without violating § 525(a) could consider the previous shortage of collateral in making a decision concerning the Debtors' future financial responsibility.

2. The regulations, on their face, do not discriminate against a debtor in a manner prohibited by § 525(a).

3. The regulations were not applied so as to deny access to the "on-farm storage" program to those individuals who had defaulted on a previous loan with substantial losses of collateral and who filed for relief under the Bankruptcy Code but to permit access to the program to those individuals in a similar situation but who did not so file.

4. The reason for denying the Debtors' participation in the program in 1985 was due to the substantial shortages in collateral which occurred when the Debtors participated in the program in 1983.

5. There is no violation of § 525(a).

The Debtor's Petition is accordingly DENIED.