In re Harry Llewellyn HOWREN and Betty Lee Howren, Debtors.

The BOARD OF TRUSTEES OF the UNIVERSITY OF ALABAMA, a Corporation, Plaintiff,

v.

Harry Llewellyn HOWREN, Defendant.

Bankruptcy No. 80–10073.
Adv. No. 80–0425.

United States Bankruptcy Court,
D. Kansas.

Oct. 10, 1980.

Jeff Roth, Wichita, Kan., for plaintiff.

Michael D. Gragert, Wichita, Kan., for debtor, Harry Llewellyn Howren.

## MEMORANDUM OF DECISION

ROBERT B. MORTON, Bankruptcy Judge.

### STATEMENT OF THE CASE

Defendant, Harry Llewellyn Howren, filed a joint voluntary petition for Chapter 7 relief, together with his wife, Betty Lee Howren, on January 21, 1980. Included in the debtors' schedule of unsecured creditors was the University of Alabama (University) which had extended a $7,896.00 direct educational student loan to debtor Harry Howren. On June 23, 1980, the University filed a complaint to determine the debt nondischargeable and for judgment to recover the balance of $7,519.25 currently owing on the obligation by Harry Howren. The latter filed an answer and a counterclaim on July 5, 1980 seeking $100,000 compensatory and $100,000 punitive damages against the University for its continued refusal to release debtor's official transcript upon 'reasonable demand' by Howren.

The University contends its policy requires a student's transcript to be withheld until all accounts owed the University by the student are satisfied.

On August 29, 1980, Howren filed the instant motion requesting the court to order the immediate release of his transcript. At the hearing on the motion, debtor's attorney's statement was unchallenged to the effect that Howren had recently applied for a teaching position and is required to submit his official University of Alabama transcript to his potential employer by October 15, 1980 as a prerequisite for the proper consideration of his employment application.

## MEMORANDUM

### I

In opposing Howren's motion for immediate relief, plaintiff University contends the bankruptcy court does not have jurisdiction over the issue of defendant's entitlement to a release of his transcript.

■ Reference to the broad grant of jurisdiction afforded the bankruptcy court under 28 U.S.C. § 1471 (Supp.1980) negates that contention. Subsection (b) of the statute provides:

"Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11."

These extensive jurisdictional powers are conferred on the bankruptcy court by subsection (c):

"The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts."

The University readily admits that its purpose in withholding the debtor's transcript is to compel payment of Howren's student loan. It is also undisputed that the debt arose prior to the bankruptcy proceeding and that the bankruptcy court has jurisdiction to determine the dischargeability of the debt pursuant to 11 U.S.C. § 523(a)(8). Because the withholding of the transcript is clearly an 'act' designed to effect collection of a prepetition debt within the bankruptcy court's jurisdiction, it follows that a proceeding to determine the propriety of the University's action is a proceeding "arising in" or "related to" a case under title 11. Therefore, the bankruptcy court has jurisdiction in the instant proceeding pursuant to 28 U.S.C. § 1471 (Supp.1980).

### II

§ 525 of the Bankruptcy Code [1] protects against discriminatory treatment of persons by governmental units on account of such persons' insolvency or past or present status as a debtor or bankrupt. The provision was intended to codify the Supreme Court's decision in *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) which held that an Arizona statute was in direct conflict with the 'fresh start' policy of bankruptcy because the statute permitted the state to refuse to renew a driver's license for the reason that an automobile collision judgment was unpaid as a consequence of a discharge in bankruptcy. See H.R.95–595, 95th Cong., 1st Sess., 366 (1977, U.S.Code Cong. & Admin.News 1978, p. 5787. § 525, therefore, prohibits state discrimination against debtors in a manner inconsistent with bankruptcy policy and is designed to prevent governmental units from frustrating the fresh start policy of the Bankruptcy Code. See 3 *Collier on Bankruptcy*, ¶ 525.-02, at 525–2 (15th Ed. 1980).

■ Although certain acts of discrimination are expressly prohibited in § 525, the enumeration is not exclusive.

"In addition, the section is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination. The courts have

1. 11 U.S.C. § 525.

been developing the *Perez* rule. This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions . . . or by other organizations that can seriously affect the debtors' livelihood or fresh start . . . The courts will continue to mark the contours of the anti-discrimination provision .in pursuit of sound bankruptcy policy." H.R.95–595, 95th Cong., 1st Sess., 366–7 (1977), U.S.Code Cong. & Admin.News 1978, p. 1323.

Moreover, a debtor need not have been granted a discharge for § 525 to apply. "The proscriptions of § 525 are applicable to discriminatory actions prompted by a debtor's recourse to the protection of the Bankruptcy laws regardless of whether the debtor has obtained a discharge." *In the Matter of Calvin Heath and Michelle R. Heath*, 3 B.R. 351, 6 B.C.D. 169 at 170. The legislative history supports this view:

> "The prohibition extends only to discrimination or other action based solely on the basis of bankruptcy, on the basis of insolvency before or during a bankruptcy *prior to a determination of discharge*, or on the basis of non-payment of a debt discharged in the bankruptcy case." (Emphasis supplied) H.R.95–595, 95th Cong., 1st Sess. 366–67 (1977), U.S.Code Cong. & Admin.News 1978, p. 6322.

In the instant case, the University, a state educational institution of higher learning, is clearly subject to § 525.

Taking a somewhat different tack, the University also asserts it has a security interest in debtor's transcript, and therefore, a possessory right to its retention. Under such a view, the University's action is not inconsistent with the Bankruptcy Code. The court does not agree. As observed in *In the Matter of Calvin Heath and Michelle R. Heath, supra*, a student's transcript, unlike collateral in which a creditor ordinarily takes a security interest, has no intrinsic value to the University. Refusal to release the transcript, therefore, is not equivalent to withholding property for the purpose of protecting a property interest which the creditor possesses in the specific collateral. *See In the Matter of Calvin Heath and Michelle R. Heath, supra.*

■ It is apparent that the University in the present case, as the University in the *Heath* case, is withholding Howren's transcript for the sole purpose of compelling him to pay a prepetition debt. Such action, once the bankruptcy proceedings are initiated, conflicts with the Bankruptcy Code's fresh start policy and contravenes § 525. A leading authority on bankruptcy is in accord with this position.

> "A common pattern of discriminatory treatment has been the refusal of colleges and universities to release the transcripts of former students until all debts owed to the school have been paid, even if such debt had been discharged. It was held that such treatment by a private college did not violate the rule of *Perez v. Campbell,* even if the refusal to release the transcript made it impossible for the former student to gain admission to a graduate school. The rationale was that *Perez* only prohibited discrimination by governmental units, not by private entities. In a similar case involving a state university, the opposite result was reached because *Perez* did not allow discriminatory treatment through state action. Under § 525, a similar result would be reached." 3 *Collier on Bankruptcy,* ¶ 525.03, at 525–6–7 (15th Ed. 1980).

*See also Handsome v. Rutgers University,* 445 F.Supp. 1362 (D.N.J.1978). The court finds that the University is acting in violation of § 525 by withholding Howren's transcript and should immediately release to Howren the official transcript in question.

### III

■ In addition to violating § 525, the University's refusal to release Howren's transcript violates the automatic stay provisions of § 362. § 362(a)(6)[2] provides that "a petition filed under §§ 301, 302, or 303 of this title operates as a stay, applicable to all

---

**2.** 11 U.S.C. § 362(a)(6).

entities, of—(6) *any act* to collect, assess, or recover a claim against the debtor *that arose before the commencement of the case*". (Emphasis supplied). This provision was intended to prevent *any kind of attempt* to collect prepetition debts.

"Paragraph (6) prevents creditors from attempting in any way to collect a prepetition debt ... Inexperienced, frightened, or ill-counseled debtors may succumb to suggestions to repay notwithstanding their bankruptcy. This provision prevents evasion of the purpose of the bankruptcy laws by sophisticated creditors." H.R.95–595, 95th Cong., 1st Sess., 340–42 (1977), U.S.Code Cong. & Admin.News 1978, p. 6298.

### IV

The foregoing constitutes findings of fact and conclusions of law as required by Bankruptcy Rule 752 and Rule 52(a) Federal Rules of Civil Procedure.