**In re Howard Carl GUSTAFSON, Jr., Debtor.**

**CALIFORNIA STATE UNIVERSITY, FRESNO, and Jolene Revis, Appellants,**

v.

**Howard Carl GUSTAFSON, Jr., Appellee.**

**BAP No. NC–87–1196–RVP.**
**Bankruptcy No. 586–01989–ASE.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Nov. 17, 1988.

Decided Feb. 28, 1990.

Jeffrey Pierce, Deputy Atty. Gen., San Francisco, Cal., for appellants.

Richard B. McLaughlin, Salinas, Cal., for appellee.

Before RUSSELL, VOLINN and PERRIS, Bankruptcy Judges.

PERRIS, Bankruptcy Judge.

Debtor filed a motion for sanctions against a California university for failure to turnover his transcripts after he filed a Chapter 7 petition. The university contended that it was not required to release the transcripts until a notice of discharge was received. The bankruptcy court held that the university's actions in withholding the transcripts violated the automatic stay and awarded sanctions of $312.50 to the debtor. We affirm.

## FACTS

Howard Carl Gustafson ("the debtor") filed for Chapter 7 relief on May 2, 1986 and received a discharge on October 3, 1986. The debtor's schedules listed California State University Fresno ("CSUF") as a creditor based on an unpaid National Direct Student Loan obligation (NDSL).

On July 11, 1986, the debtor requested the release of his transcripts from the university as he needed them to take a Civil Service Exam purportedly required by his employer. He informed CSUF that he had filed for bankruptcy and contended the university was required to release his transcripts. A university official responded by stating that his outstanding NDSL obligation prevented the release of the transcripts until notice of discharge was received. This position was reiterated by the same official in a later call initiated by CSUF, after confirmation of the university's position.

The debtor wrote to CSUF on July 14, 1986, to again request the release of the transcripts. He represented in his letter that he needed the transcripts by August 15, 1986 in order to take the Engineer in Training Exam on October 25, 1986. The same university official wrote to the debtor stating, "[t]he only way I would release your transcripts before I receive the 'Discharge from the Bankruptcy Court' would be for you to reaffirm your National Direct Student Loan with us."

On September 11, 1986, debtor then filed a motion for contempt on the grounds of willful and malicious conduct in which he inaccurately represented that his debt had been discharged. This matter was heard on November 7, 1986, and the court issued an order for sanctions whereupon the following findings were entered:

1. At the time debtor requested a copy of his transcripts from the CALIFORNIA STATE UNIVERSITY the university and JOLENE REAVIS [sic] were aware of debtor's Chapter 7 case;

2. The actions of THE CALIFORNIA STATE UNIVERSITY and JOLENE REAVIS [sic], in withholding debtor's transcripts were in violation of Title 11, United States Code § 362(a)(6);

3. The actions of the CALIFORNIA STATE UNIVERSITY and JOLENE REAVIS [sic] were not malicious.

Sanctions of $312.50 were ordered against CSUF for the debtor's attorney's fees from which the university appeals.

## ISSUES

1. Whether the automatic stay applies to prevent acts to collect a debt that is presumed but not determined to be nondischargeable under 11 U.S.C. § 523(a)(8).[1]

2. Whether CSUF's withholding of transcripts and the communications concerning the transcript were acts to collect a debt in violation of Section 362(a)(6).

3. Whether the actions of CSUF were sufficiently willful so as to support an award of damages under section 362(h).

4. Whether the debtor should be denied recovery on the basis of unclean hands.

5. Whether the debtor has established injury as a result of a violation of the automatic stay.

---

1. All references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, unless otherwise indicated.

## STANDARD OF REVIEW

 Findings of Fact will not be overturned unless clearly erroneous. Bankruptcy Rule 8013. Questions of law are subject to *de novo* review. *In re Redding-ton Investments, Ltd. Partnership—VIII,* 90 B.R. 429, 430 (9th Cir. BAP 1988). Whether the automatic stay applies to debts that are presumed, but not determined, to be nondischargeable under section 523(a)(8) presents a question of law. If the automatic stay is applicable, whether CSUF acted with a purpose of collecting the debt in violation of section 362(a)(6) is a question of fact. *See Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84–85 (3rd Cir.1988). Whether a violation of the automatic stay was willful and the bankruptcy court's assessment of damages for a violation of the stay was proper are questions of fact. *See In re Bloom,* 875 F.2d 224 (9th Cir.1989).

## DISCUSSION

1. *The automatic stay applies to a debt that is presumed but not determined to be nondischargeable pursuant to Section 523(a)(8).*

 Section 523(a)(8)[2] of the Bankruptcy Code provides that educational loan debts are nondischargeable unless the loan 1) first became due prior to five years before filing, or 2) not excepting the loan from discharge would cause undue hardship to the debtor. The effect of this section is to make student loans presumptively nondischargeable until a complaint is brought to determine dischargeability based on one of the two exceptions.

 Section 523(a)(8) is self-executing and the burden is on the debtor to bring a complaint to determine dischargeability of the debt. *Buford v. Higher Educ. Assist-*

ance Foundation, 85 B.R. 579 (D.Kan. 1988). The lender is not required to file a complaint to determine dischargeability. S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

11 U.S.C. Section 362(a)(6) provides in pertinent part that the filing of a bankruptcy petition operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case...." Violations of the automatic stay are punishable under 11 U.S.C. Section 362(h) which provides:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

 The automatic stay does not apply to prevent acts to collect claims that a bankruptcy court has determined to be nondischargeable under section 523(a)(8). *See In re Watson,* 78 B.R. 232 (9th Cir. BAP 1987) (a creditor who obtains a section 523 judgment of nondischargeability may proceed with execution on non-estate property without obtaining relief from the automatic stay); *see also Johnson v. Edinboro State College,* 728 F.2d 163 (3d Cir.1984) (bankruptcy court could not order the college to turn over to the debtor his diploma and a copy of the transcript after bankruptcy court determined that a debt for an outstanding student loan was nondischargeable under § 523(a)(8)). Where, however, the debt is merely presumed to be nondischargeable under section 523(a)(8), but the bankruptcy court has not yet determined that the debt is nondischargeable, policy reasons compel the application of a different rule.

2. Section 523(a)(8) states:
(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
. . . . .
(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

The purpose of the automatic stay is to give the debtor a breathing spell from his or her creditors and to relieve the financial pressures that drove him or her to bankruptcy. *Watson*, 78 B.R. at 234. As such, the automatic stay is one of the most fundamental debtor protections provided by the bankruptcy laws. House Report No. 95–595, 95 Cong., 1st Sess, 340–344 (1977), U.S.Code Cong. & Admin.News 1978, p. 5963. If the automatic stay is found to be inapplicable to debts that are presumed, but not determined, to be nondischargeable, this fundamental protection of the automatic stay could be lost even though the debt may ultimately turn out to be dischargeable. For example, a debtor may assert time bar and/or hardship defenses against a student loan creditor who seeks to establish the nondischargeability of the student loan obligation. If a debtor who has a valid time bar or hardship defense is contacted by a student loan creditor who disagrees with the validity of these defenses, the debtor will be forced to affirmatively seek a stay to prevent efforts to collect a debt that will ultimately be nondischargeable unless the automatic stay is applicable to efforts to collect presumptively nondischargeable debts. Such a result is contrary to the purposes of the automatic stay.[3]

Moreover, section 362(b) expressly sets forth exceptions to the automatic stay. One of these exceptions indicates that the automatic stay does not apply to "the collection of alimony, maintenance, or support from property that is not property of the estate." Section 362(b)(2). Such debts for alimony, maintenance or support are excepted from discharge under section 523(a)(5). The conscious decision of Congress to make an express exception for one nondischargeable debt implies that Congress intended that collection of other nondischargeable debts be subject to the automatic stay.

We therefore determine that the automatic stay applies to preclude a creditor's attempts to collect a claim that is presumed, but not yet determined by the bankruptcy court, to be nondischargeable under section 523(a)(8). Once the bankruptcy court determines that the debt is nondischargeable under section 523(a)(8), efforts to collect the debt from non-estate property are not precluded by the automatic stay.[4] The requirement of a judgment of nondischargeability assures that the debtor is protected from any attempt to collect dischargeable debts during the breathing space afforded by the automatic stay by virtue of the fact that the court has considered nondischargeability and decided in favor of the creditor. Under the facts of this case, however, prior to such a judgment and prior to the discharge, the policy underlying the automatic stay applies to prevent attempts to collect debts that are presumed but not determined to be nondischargeable under section 523(a)(8).

2. *Withholding transcripts as a violation of section 362(a)(6).*

■ Having determined that the automatic stay applies to prevent efforts to collect the debt at issue, the next question is whether CSUF's actions in withholding transcripts is an act to collect the claim in violation of section 362(a)(6). The bankruptcy court implicitly found that CSUF withheld the transcript in an attempt to collect the debtor's outstanding student loan obligation. We agree. Withholding of the transcript could serve no purpose other than to compel the repayment of the

---

3. In addition, withholding the debtor's transcript is arguably counterproductive to the creditor's desire to be paid and the debtor's need to obtain the additional training and/or employment necessary to enable the debtor to pay the presumptively nondischargeable student loan.

4. In reaching this decision we are not faced with, nor do we decide, whether the post-discharge injunction of section 524(a) applies to prevent acts to collect debts that are presumed, but not determined, to be nondischargeable under section 523(a)(8). In this regard, this case is distinguishable from those cases which address whether collection efforts are precluded after the debtor received a discharge in Chapter 7. *See Buford v. Higher Educ. Assistance Foundation, supra; see also Johnson, supra* (considering whether the student loan creditor could withhold transcripts after the bankruptcy court had granted a discharge and after the bankruptcy court had determined that the debt at issue was nondischargeable).

debt or reaffirmation of the obligation. Moreover, given the lack of a transcript of the hearing before the bankruptcy court and CSUF's statement that it would not provide a transcript unless debtor reaffirmed the debt, we cannot determine that this finding is clearly erroneous.[5]

This conclusion finds support from cases decided in two distinct contexts. First, the Court of Appeals for the Ninth Circuit recognized in a Fair Debt Collection Practices case that withholding transcripts from a defaulting student borrower is an "enforcement mechanism". *Juras v. Aman Collection Service, Inc.*, 829 F.2d 739, 743 (9th Cir.1987) *cert. denied,* — U.S. ——, 109 S.Ct. 192, 102 L.Ed.2d 162 (1988). The court in *Juras* summarized the effect of bankruptcy on a defaulting student's right to his transcript from a state educational institution as follows:

> "... the bankruptcy laws underwent wholesale revision in 1978, and every court that has addressed the issue since has held that institutions cannot withhold transcripts from students who have had their loans discharged in bankruptcy, who are making payments under a Chapter 13 plan, *or who have filed for bankruptcy but not yet received a discharge.*" *Id.* at p. 744 (emphasis added, citations omitted).

The dissent's analysis that withholding a transcript from a Chapter 7 debtor protected by the automatic stay in order to collect a student loan is permissible is contrary to *Juras* and would make the protection afforded a Chapter 7 debtor by the automatic stay inferior to that provided a Chapter 13 debtor, a distinction not supported by the language of § 362.

Second, numerous cases have determined that a college's stated policy of withholding transcripts constitutes an attempt to collect a debt in violation of section 362(a)(6). *See, e.g., In re Parham*, 56 B.R. 531 (Bankr.E.D.Va.1986); *In re Heath*, 3 B.R. 351 (Bankr.E.D.Ill.1980).[6] We recognize that *Parham* and *Heath*, similar to many other cases addressing this issue, are Chapter 13 cases in which student loans could be discharged. Having decided that the automatic stay applies to presumptively nondischargeable debts as well as dischargeable debts, it is of no legal significance whether the automatic stay has been imposed as the result of a Chapter 7 petition or a Chapter 13 petition.

The fact that CSUF did not act affirmatively does not alter our conclusion that withholding the transcript is an attempt to collect a debt in violation of section 362(a)(6) because a refusal to take affirmative action can, in certain instances, constitute an act to collect a claim in violation of the automatic stay. *See In re Farmers Markets, Inc.*, 792 F.2d 1400, 1404 (9th Cir.1986) (the state's refusal to transfer a liquor license held by the debtors until payment of delinquent state taxes was an act to collect a debt in violation of section 362(a)(6)).

Similarly, we are not persuaded by the dissent's "administrative freeze" analogy. In the administrative freeze context, the creditor's right to set-off could be entirely lost if the account is not frozen and the debtor is allowed to dissipate the funds. In the present context, the withholding of a transcript, unlike the freezing of an account, does not allow the creditor to gain

---

**5.** In *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988), the Third Circuit declined to find clear error in the bankruptcy court's finding that a credit union did not act with the purpose of collecting or compelling reaffirmation of a debt by refusing to provide further services to the debtor in accordance with its policy. Aside from the fact that such a refusal to provide further services could serve valid purposes other than collecting a debt, the affirmance of the bankruptcy court through the application of the clearly erroneous standard makes *Brown* inapposite. *Brown* also determined as a matter of law that the credit

union's actions in communicating this policy to the debtor did not violate the stay. However, the conduct at issue in this case is the actual act of withholding the transcripts, not merely CSUF's communication of the fact that it would do so.

**6.** *Heath* also considered the applicability of section 525 to the withholding of a debtor's transcripts. Section 525, however, was not raised as an issue on appeal or in the court below and we therefore decline to consider its effect.

anything or avoid the irreparable loss of substantive rights. Nor does it interfere with the creditor's right to exercise control over cash collateral, as in the administrative freeze context. By being forced to relinquish a transcript during the limited time period involved in this case, the college does not lose its right nor, as a practical matter, its ability to collect the debt if it survives the discharge in bankruptcy.

Finally, the fact that CSUF initiated the process of withholding transcripts to compel payment of a debt only in response to questions from the debtor is not legally significant. The precise question is whether the interaction between the parties, all things considered, involved an effort to compel payment of the debt and we affirm the bankruptcy court's finding that it did.

### 3. The willfulness of CSUF's conduct.

■ CSUF contends that any violation of the automatic stay could not be willful in light of the bankruptcy court's finding that the actions were not malicious. In this regard, CSUF equates willfulness with maliciousness.

The Ninth Circuit recently defined "willful" as that term is used in section 362(h):

A "willful violation" does not require a specific intent to violate the automatic stay. Rather the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.

*In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989) (quoting *INSLAW, Inc. v. United States (In re INSLAW, Inc.)*, 83 B.R. 89 (Bankr.D.D.C.1988). Notwithstanding the fact that its conduct may not have been malicious, CSUF's actions clearly satisfy this definition as they knew of the automatic stay and their actions in withholding the transcript unless the debtor reaffirmed his NDSL obligation were intentional.

### 4. Unclean Hands.

■ CSUI contends that the debtor should be denied recovery under the doctrine of unclean hands because he misrepresented his bankruptcy status and because of his indignation at CSUF for its failure to release the transcript. We find nothing in the record supporting this contention. In any event, the application of the doctrine of unclean hands is inappropriate because there is no evidence that CSUF was inequitably affected by the purported conduct giving rise to CSUF's assertion of this defense. *See Martin v. Kehl*, 145 Cal. App.3d 228, 240–41, n. 1, 193 Cal.Rptr. 312 (1983); *see also In re Torrez*, 827 F.2d 1299, 1301, n. 4 (9th Cir.1987).

### 5. The injury suffered by the debtor.

■ CSUF contends that the debtor failed to demonstrate any injury suffered as a result as a failure to release the transcript. An award of attorneys fees is appropriate "where a debtor must resort to the courts to enforce his or her rights in consequence of a violation of the automatic stay." *In re Stucka*, 77 B.R. 777, 784 (Bankr.C.D.Cal.1987). Thus, notwithstanding the fact that the debtor may have suffered no injury other than his attorneys fees, the fact that the debtor was forced to resort to the courts to obtain the transcript withheld in violation of the stay and the fact that the debtor incurred attorneys fees in doing so demonstrates a compensable injury under section 362(h).

### CONCLUSION

The automatic stay applies to preclude a creditor's attempts to collect a claim that is presumed, but not yet determined by the bankruptcy court, to be nondischargeable under section 523(a)(8). We affirm the bankruptcy court's implicit finding that CSUF's actions in withholding the transcript constituted an act to collect a pre-petition claim in violation of section 362(a)(6) and that such actions were willful and caused injury to the debtor. The debtor should not be denied recovery under the doctrine of unclean hands. For these reasons we affirm the bankruptcy court's deci-

sion.[7]

RUSSELL, Bankruptcy Judge, dissenting:

I respectfully dissent. I disagree with the majority's discussion entitled "Withholding Transcripts as a Violation of Section 362(a)(6)" which in effect concludes that upon request by a debtor, a university must turn over the debtor's transcripts or risk sanctions for violating Section 362. This conclusion would turn the law on its head.

### I. *Merely withholding the transcripts was not a violation of the Automatic Stay.*

The question is whether the university violated the automatic stay by withholding the debtor's transcripts. Withholding of transcripts has been established in this circuit as a proper method of debt collection outside of bankruptcy. *See Juras v. Aman Collection Serv. Inc.,* 829 F.2d 739 (9th Cir.1987), *reh'g. denied,* — U.S. —, 109 S.Ct. 523, 102 L.Ed.2d 556 (1988) (university can withhold, as transcripts are not property of the debtor, and thus do not constitute "security").

Although the majority opinion accurately quotes the *Juras* opinion, the holding in *Juras* was that the following statement of the university was false and misleading as a matter of law: "[I]f you make a decision to try to discharge this debt in bankruptcy, and if you are successful, transcripts would

still not be made available to you ... To capsulize, I would have to say that my authority is based on Federal law." *Id.* at 743–44. In effect the Ninth Circuit held that if it is determined that the debt is discharged, then the university would be required to turn over the transcript.

Furthermore, *Juras* endorsed the analysis in *Johnson v. Edinboro State College,* 728 F.2d 163 (3d Cir.1984), in stating that a university has the right to withhold transcripts if "arrangements to repay the loan or discharge the debt are lacking." *Juras,* 829 F.2d at 743. Clearly in this Chapter 7 case the debtor has made no arrangements to repay the loan or discharge the debt.

As student loans are presumptively nondischargeable in Chapter 7 until determined otherwise by the court, and as no such determination was sought in this case, Section 362 does not prohibit the university's refusal to turn over the transcripts. *See Johnson,* 728 F.2d at 165.[1]

In *Johnson,* the bankruptcy court determined that the debtor's educational loans were nondischargeable, but ordered the college to give the debtor a diploma and a copy of his transcripts. The District Court affirmed. The Third Circuit reversed and distinguished the Chapter 13 cases.[2] The Court succinctly stated the issue and its conclusion in the opening lines of its opinion:

In this appeal, we are asked to decide whether the Bankruptcy Code prohibits a state college from retaining the tran-

---

**7.** We do not find that this is a frivolous appeal and, accordingly, the debtor's request for sanctions on appeal is denied.

**1.** The present case does not contradict the holdings of the Chapter 13 cases which have found a violation of 11 U.S.C. Sections 525 and/or 362. Under Chapter 13, student loans are not presumptively nondischargeable. *See In re Reese,* 38 B.R. 681 (Bankr.N.D.Ga.1984) (transcript withholding in Chapter 13 prior to discharge was a violation of Sections 362(a)(6) and 525); *In re Ware,* 9 B.R. 24 (Bankr.W.D.Mo.1981) (motion to compel turnover granted in Chapter 13 prior to discharge based on Section 525 and Section 362(a)(6) violations). *In re Howren,* 10 B.R. 303 (Bankr.D.Kan.1980) is contrary to my view. However, *Howren* based its holding on Chapter 13 cases only and did not address the effects of the differences in the presumption of

nondischargeability. *Howren* was also specifically rejected by the Third Circuit in *Johnson,* 728 F.2d at 166 n. 5.

**2.** Although the Chapter 13 cases can easily be distinguished, there is a serious question as to whether even a Chapter 13 debtor is entitled to the transcripts until the discharge is actually entered under § 1328(a) and the student loan is actually discharged. Because of a Chapter 13 debtor's absolute right to dismiss the case under 11 U.S.C. Section 1307, a debtor could file a Chapter 13 case and demand the transcripts from a university. If the university must promptly comply with the request, after receiving the transcripts the debtor may then immediately dismiss his case without having filed a plan or having made a single plan payment. This would hardly be a just result.

script of a debtor whose educational loans were not dischargeable in a Chapter 7 proceeding. We hold that it does not.

*Id.* at 167.

To hold otherwise would produce an extremely unusual and unfair result. I assume that the majority would agree that after a court actually determines the debt is nondischargeable, that the university would not be in violation of Section 362 in refusing to turn over the transcripts. If a debtor feels that his student loan is dischargeable he may file a complaint to determine the dischargeability of the debt, and if he prevails, the university must turn over the transcripts.

In this case by holding that the mere refusal to turn over the transcripts is a violation of Section 362, the majority denies the university its day in court. If it turns over the transcripts, it has lost, and if it refuses, it is in violation of Section 362 and the presumption of nondischargeability is meaningless as to its ability to refuse to turn over the transcripts. It is clear to me that the university must not be put to such a Hobson's choice until the court has actually determined the dischargeability of the debt.

This situation is similar to the dilemma in which a bank finds itself concerning protecting its setoff rights under 11 U.S.C. Section 553 by putting an "administrative freeze" on the debtors checking account. If it complies with the debtors demand for the funds, the money may be dissipated without adequate protection for the bank. If the bank refuses to turn over the funds, it may face sanctions for a violation of the automatic stay. The Bankruptcy Appellate Panel, in *In re Edgins*, 36 B.R. 480 (9th Cir. BAP 1984), appropriately held that the "administrative freeze" is proper and it is the debtor's obligation to initiate a proceeding to determine the proper disposition of the account funds after a bank has placed an "administrative freeze" on the account.

II. *No affirmative act by the university violated Section 362(a)(6).*

Section 362(a)(6) does not provide a bar to the university's withholding of the tran-

scripts. As previously stated, the automatic stay cannot be construed so as to require affirmative action on a presumptively non-dischargeable debt. The debtor had no right to the transcripts and should not be afforded them under Section 362. Only upon a finding of dischargeability would the university be required to deliver the transcripts to the debtor. *See Johnson,* 728 F.2d at 164.

In *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81 (3rd Cir.1988), the Third Circuit held that as a matter of law, a credit union did not violate Section 362(a)(6) by sending an unsolicited letter advising the debtor that unless she reaffirmed her credit union debt, the credit union would refuse all future services to her.

In *Brown,* the debtor filed a Chapter 7 petition on May 1, 1984. On May 3, her attorney wrote the credit union informing it of the bankruptcy and that "all collection efforts ... should cease immediately." On June 5, 1984, the credit union sent a letter directly to Brown, without a copy being sent to her attorney. The letter read in part:

> It is the Credit Union's policy to deny future services to members when any portion of the debt is discharged in bankruptcy. However, if the obligation is reaffirmed with court approval, you would remain eligible for services as though the bankruptcy had not occurred.

CSUF's position is far stronger than that of the credit union in *Brown,* in that all of the university's actions were merely in direct response to the unwarranted demands of the debtor. In fact, the university's response that it would not release the transcripts until the debtor received his discharge was extremely reasonable, because as previously discussed, it was well within its rights to refuse to turn over the transcripts at least until a court declared the debt to be dischargeable.

CONCLUSION

The withholding by CSUF of the debtor's transcripts, where the debtor's student

loan to CSUF was presumed to be nondischargeable pursuant to 11 U.S.C. Section 523(a)(8), was not a violation of Section 362(a)(6). Therefore, I would reverse the imposition of sanctions of $312.50 against CSUF.