**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1309
_____

IN RE: STEVEN RICHARD ALECKNA;
JAIME SUE ALECKNA,

Debtors

CALIFORNIA COAST UNIVERSITY,

Appellant

v.

JAIME SUE ALECKNA
_____

On Appeal from the United States
District Court for the Middle District of Pennsylvania
D.C. Civil No. 3-16-cv-00158
District Judge: Honorable Robert D. Mariani
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 16, 2020
_____

Before: GREENAWAY, JR., SHWARTZ, and FUENTES,
*Circuit Judges*.

(Opinion Filed: September 9, 2021)

Jeffery J. Daar
Daar & Newman
21700 Oxnard Street
Suite 350
Woodland Hills, CA 91367


Robert P. Sheils, Jr.
Sheils Law Associates
108 North Abington Road
Clarks Summit, PA 18411

    *Counsel for Appellant*

Brett M. Freeman
Carlo Sabatini
Sabatini Law Firm
216 North Blakely Street
Dunmore, PA 18512

    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

California Coast University ("CCU" or the "University") appeals from the District Court's order affirming an award of attorneys' fees and other relief to its former student, Jaime Aleckna. When Aleckna filed for Chapter 13 bankruptcy, she still owed CCU tuition. The filing of her bankruptcy petition, however, imposed an "automatic stay" of all collection actions against her, and therefore enjoined the University from attempting to recover that debt during the course of the proceedings.[1]

While her case was pending, Aleckna, who had completed her coursework, asked CCU to send her a copy of her transcript. The University responded but would only provide her with an incomplete one that did not include a graduation date, explaining that a "financial hold" had been placed on her account.[2] Aleckna eventually filed a counterclaim against CCU in the Bankruptcy Court arguing that it violated the automatic stay by refusing to provide her with a complete certified transcript. The Bankruptcy Court found in Aleckna's favor, concluding that she was entitled to receive her complete transcript, as well as damages and attorneys' fees because the University's violation was

---

[1]    *See* 11 U.S.C. § 362(a)(6) (providing that a bankruptcy petition "operates as a stay, . . . of . . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case").

[2]    App. 871.

3

"willful."[3] CCU appealed to the District Court, arguing that its violation could not have been "willful" under this Court's decision in *In re University Medical Center*,[4] which provides a limited defense in some cases.

On appeal, we must first decide whether *University Medical* remains good law in light of subsequent amendments to the Bankruptcy Code—specifically, to § 362, which governs alleged violations of the automatic stay.[5] We conclude that it does, but that CCU has failed to establish a defense under that case. For the reasons that follow, we will affirm.

## I.

Aleckna was a student at CCU until 2009, but she stopped making tuition payments some time that year. By the time she filed for bankruptcy, she still owed CCU approximately $6,300, which she initially characterized in her schedules as "disputed" debt.[6] Aleckna informed the

---

[3] *In re Aleckna*, 543 B.R. 717, 722, 725 (Bankr. M.D. Pa. 2016); *see also In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990) (explaining that a violation is willful where (1) "the defendant knew of the automatic stay," and (2) its "actions which violated the stay were intentional") (quoting *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989)).

[4] 973 F.2d 1065 (3d Cir. 1992).

[5] 11 U.S.C. § 362.

[6] Educational loans are generally non-dischargeable in a Chapter 13 bankruptcy unless the "debt would impose an 'undue hardship' on the debtor." *United*

University that she had filed for bankruptcy and requested copies of her transcript for her files.[7] As a matter of policy, CCU has not invoked the legal process to recover debts owed by its students. Instead, the University will consider any student with a past-due balance to have not technically graduated and may withhold the student's transcript or diploma as a result.

After some back-and-forth regarding the status of her bankruptcy case, CCU eventually sent Aleckna copies of her transcript, but no graduation date was listed on them. Aleckna inquired about the missing date and was informed that she did not technically graduate due to the financial hold on her account. CCU then filed an action in the Bankruptcy Court seeking an order declaring that Aleckna's debt was a non-dischargeable educational loan. In response, Aleckna filed a counterclaim against CCU arguing that the debt was dischargeable and the University violated the stay by failing to

---

*Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 263 (2010) (citing 11 U.S.C. §§ 523(a)(8), 1328). When she first filed her petition, Aleckna was not sure whether CCU considered her debt to be a non-dischargeable student loan or something else, which is why she classified it as "disputed" in her bankruptcy schedules. As set forth below, CCU eventually did argue that the debt was a non-dischargeable student loan, but later withdrew its challenge with prejudice. *See* App. 807-09.

[7]     Aleckna also testified that she needed a copy of her transcript so that she could apply to graduate programs in the future.

5

issue her a complete transcript.[8]   In other words, Aleckna asserted that the University's withholding of her transcript was an unlawful attempt to collect on pre-petition debt.[9]   The University still refused to provide her with a complete transcript and opposed her counterclaim, but later agreed to withdraw its non-dischargeability action with prejudice.[10] This withdrawal was essentially a concession that Aleckna's debt was dischargeable under the Bankruptcy Code and would be extinguished upon termination of the proceedings.[11]

A bench trial was held on Aleckna's counterclaim after CCU unsuccessfully moved for summary judgment.   The

---

[8]     The parties dispute whether Aleckna explicitly raised this argument in her counterclaim when it was first filed, but they do not dispute that she later amended the counterclaim to specifically include allegations that CCU violated the stay by refusing to provide her with a complete transcript and degree.

[9]     *See, e.g.*, 11 U.S.C. § 362(a)(6).

[10]     CCU's statement that its challenge was dismissed "without prejudice . . . since it was not necessary to have the issue of dischargeability decided," Appellant's Br. at 15 n.4, seems to blatantly misrepresent the record, *see* App. 816 (order of the Bankruptcy Court dismissing CCU's complaint "with prejudice").

[11]     *See Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 611 (3d Cir. 2020) ("A dismissal with prejudice 'operates as an adjudication on the merits,' so it ordinarily precludes future claims.") (quoting *Landon v. Hunt*, 977 F.2d 829, 832-33 (3d Cir. 1992)).

Bankruptcy Court concluded that a "final transcript, with no graduation date, [is] akin to a letter of reference with no signature," and was essentially useless.[12] The Bankruptcy Court determined that because providing an incomplete transcript is tantamount to providing no transcript at all, CCU had violated the automatic stay. The Bankruptcy Court also found that CCU's violation was "willful," so it awarded Aleckna damages and attorneys' fees associated with litigating the transcript issue.[13] As of 2016, those fees had climbed to approximately $100,000.

CCU appealed to the District Court arguing, among other things, that the award of damages and fees was improper under *University Medical*. In that case, we held that a defendant does not "willfully" violate the automatic stay if the law governing the alleged violation was "sufficiently uncertain."[14] CCU contends that, at the time of its violation, the law may have required it to provide *a* transcript, but did not explicitly require it to provide Aleckna with a *complete* one that included a graduation date. The District Court rejected this defense, noting that CCU could not point to any persuasive authority supporting its position, and affirmed the Bankruptcy Court's order.[15] This appeal followed.[16]

---

[12] *In re Aleckna*, 543 B.R. at 725.

[13] *Id.* at 726.

[14] *Univ. Med.*, 973 F.2d at 1085, 1088.

[15] *Cal. Coast Univ. v. Aleckna*, No. 3:16-cv-00158, 2019 WL 4072405, at *1, *5 (M.D. Pa. Aug. 28, 2019).

[16] Aleckna first argues that CCU has waived or forfeited its right to assert a *University Medical* defense by

7

## II.[17]

On appeal, CCU does not argue that its conduct did not violate the automatic stay; rather, it maintains that it did not do so *willfully*, and that the District Court erred in affirming the award of damages and fees.

We must first decide whether this Court's decision in *University Medical* has been legislatively overruled. Like

---

failing to raise this argument before the Bankruptcy Court. Though the Bankruptcy Court generally discussed related concepts, its analysis does not mention *University Medical*. However, because the District Court considered the defense at length, the applicability of *University Medical* is a question of law, and it is unclear whether Aleckna raised a waiver or forfeiture argument before the District Court, we will consider it on appeal. *See Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006) ("[This Court is] reluctant to apply the waiver doctrine when only an issue of law is raised."). Alternatively, Aleckna argues that even if the issue has not been waived or forfeited entirely, it is still not properly before the Court because *University Medical* established an affirmative defense that was not pled in CCU's answer as required. We need not resolve that issue because we conclude that the defense is not satisfied regardless.

[17] The Bankruptcy Court had jurisdiction under 28 U.S.C. § 1334(b). The District Court had jurisdiction under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291. We review the District Court's legal conclusions *de novo*. *In re Bocchino*, 794 F.3d 376, 379-80 (3d Cir. 2015).

8

CCU, the defendant in *University Medical* argued that its violation was not "willful," and it was therefore not liable for damages and attorneys' fees.[18] When *University Medical* was decided in 1992, the applicable § 362 provision stated that "[a]n individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[19] The statute was silent on whether a "good faith" defense existed in any context, but we had previously held in *In re Atlantic Business & Community Corporation* that a defendant's good-faith belief that its actions complied with the stay did not, on its own, establish a defense to willfulness.[20]

In *University Medical*, however, the defendant not only acted in good faith, but was able to show that the law surrounding its violation was "uncertain," and relied on persuasive authority to support its position.[21] We held that while "good faith" alone was insufficient, the "uncertain" nature of the issue coupled with the defendant's reliance on persuasive authority negated any finding of willfulness, and the

---

[18]    973 F.2d at 1085.

[19]    11 U.S.C. § 362(h) (1990).

[20]    901 F.2d 325, 329 (3d Cir. 1990) (awarding costs and fees and explaining that "[n]otwithstanding [the stay violator's] claim that he acted in good faith, there is ample evidence to support the conclusion that he acted intentionally and with knowledge of the automatic stay as a result of the pending bankruptcy proceedings").

[21]    973 F.2d at 1088.

defendant was therefore not liable for certain damages and costs:

> A willful violation does not require a specific intent to violate the automatic stay. . . . Here, however, the actions of the [defendant] were neither in defiance of a court order nor were they contrary to . . . section[] 362 [of the Bankruptcy Code]. [Defendant] believed in good faith that he was not violating the stay. This of course is not sufficient under *Atlantic Business* to escape liability. . . . However, [defendant] also had persuasive legal authority which supported his position. . . . [W]e conclude that the withholding by [defendant] did not fall within the parameters of "willfulness" as such actions have been described in *Atlantic Business* and that [defendant] should not be penalized for the position [it] took . . . .[22]

In 2005, the relevant provision was amended and is now § 362(k). Section 362(k) provides that an individual who commits a willful violation is liable for damages and attorneys' fees unless "such violation is based on an action taken by an entity in the good faith belief" that the stay had terminated due to the debtor's failure to file a timely notice of intention.[23] Because § 362(k) can be read to establish a good-faith defense that is narrower than the one articulated in *University Medical*,

---

[22]   *Id.* (internal quotation marks and citation omitted).

[23]   11 U.S.C. § 362(k)(1)-(2); *id.* § 362(h). This exception indisputably does not apply here.

several bankruptcy courts within our Circuit have concluded that the case has been statutorily overruled.[24] Aleckna agrees with those decisions, and her reasoning tracks that of a Pennsylvania bankruptcy court in *In re Mu'min*. That court concluded that *University Medical* was "judicial gloss" on the pre-amendment Code and is therefore no longer good law.[25] It explained that in enacting § 362(k), "Congress provided for only a limited, statutory good faith exception" that is "more limited than the one expressed in *University Medical*."[26] Accordingly, the court concluded that § 362(k) overruled our

---

[24] *See, e.g.*, *In re Mu'min*, 374 B.R. 149, 168 (Bankr. E.D. Pa. 2007); *In re Lightfoot*, 399 B.R. 141, 149-50 (Bankr. E.D. Pa. 2008) (citing *Mu'min*, 374 B.R. at 168-69); *In re McWilliams*, 384 B.R. 728, 730 (Bankr. D.N.J. 2008) (recognizing *University Medical* as superseded by statute as recognized in *Mu'min*). Aleckna also points to one district court decision from within this Circuit that acknowledged this position but declined to apply it. *See In re Seymoure*, Nos. 07-4960, 07-4967, 2008 WL 1809309, at *3 n.3 (D.N.J. Apr. 22, 2008) ("The *Mu'min* court held that [the *University Medical*] exception [no longer] exists. T[his] [c]ourt, however, declines to apply the holding of the *Mu'min* court as Debtors' Chapter 13 applications were filed prior to the amendments to § 362(k).").

[25] *Mu'min*, 374 B.R. at 168.

[26] *Id.*

11

existing case law.[27] Several courts have since followed or otherwise agreed with the *Mu'min* decision.[28]

In the present case, however, the District Court concluded (and at least one other court has agreed)[29] that *University Medical* did not create the sort of "good faith" defense contemplated by § 362(k). Rather, the District Court found that *University Medical* merely provides a mechanism for defendants to challenge a finding of "willfulness," and § 362(k) does not speak to that particular element. The D.C. bankruptcy court summarized the distinction as follows:

> Some decisions characterize [*University Medical*] as creating a "good faith" exception . . . But the defense to a finding of "willfulness" . . . is not a defense of good faith, and (as in civil contempt law) is a defense, separate and distinct from good faith, that when the law is sufficiently unsettled, willful violation of the statutory command is absent, and damages are not recoverable, because the offending party has not acted in violation of a command of which it had fair notice.[30]

---

[27] *Id.*

[28] *See, e.g.*, *Lightfoot*, 399 B.R. at 149-50; *McWilliams*, 384 B.R. at 730.

[29] *See In re Stancil*, 487 B.R. 331, 343-44 (Bankr. D.C. 2013).

[30] *Id.* at 343.

12

At least one of our sister circuits has recognized this subtle but important distinction before, explaining that even though *University Medical* may sometimes be read as establishing a general defense of good faith, "decisions from within the Third Circuit demonstrate that courts did not read [that case] so broadly."[31] Indeed, "[i]n a decision issued only eight months after [*University Medical*], [this Court] itself reaffirmed that . . . 'a creditor's "good faith" belief that he is not violating the automatic stay provision is not determinative of willfulness under § 362[].'"[32]

The District Court agreed with this rationale,[33] and so do we. On its face, § 362(k) does not provide a means to disprove willfulness—rather, it says that where a willful violation occurs, a defendant is nevertheless not liable for certain damages so long as it believed in good faith that the stay had terminated.[34] *University Medical*, on the other hand,

---

[31] *IRS v. Murphy*, 892 F.3d 29, 37-38 (1st Cir. 2018).

[32] *Id.* (quoting *In re Lansdale Family Rests., Inc.*, 977 F.2d 826, 829 (3d Cir. 1992)); *see In re Lansaw*, 853 F.3d 657, 664 n.4 (3d Cir. 2017) (quoting the same).

[33] *Aleckna*, 2019 WL 4072405, at *3 (citing *Stancil*, 487 B.R. at 344).

[34] 11 U.S.C. § 362(k)(1)-(2) ("[A]n individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees . . . [unless] such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor."). Subsection (h), which does not apply here, provides that when

13

provides a theory by which defendants can challenge the "willfulness" element in its entirety.[35]  The District Court also noted that federal courts should be "reluctant to accept arguments that would interpret the Bankruptcy Code to effect a major change in pre-[amendment] practice, absent at least some suggestion in the legislative history that such a change was intended."[36]  Because there has been no such suggestion here, the District Court concluded that *University Medical* remains good law, but ultimately determined that CCU failed to establish a defense under that case regardless.

While recognizing the apparent tension between a § 362(k) "good faith" defense and *University Medical*,[37] we

---

the debtor is an individual, the stay terminates with respect to certain personal property if the debtor fails to timely file a statement of intention.  *Id.* § 362(h).

[35]      973 F.2d at 1088-89.

[36]      *Aleckna*, 2019 WL 4072405, at *4 (quoting *In re VistaCare Grp.*, 678 F.3d 218, 228 (3d Cir. 2012)).

[37]      *University Medical* provides a defense to "willfulness" where the defendant believes its actions were lawful based on persuasive authority.  973 F.2d at 1088.  But, somewhat paradoxically, "[w]illfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional." *In re Denby-Peterson*, 941 F.3d 115, 123 (3d Cir. 2019) (internal quotation marks and citation omitted).  In *Denby-Peterson*, we also recognized that § 362(k) provided only "one exception" to the rule that debtors injured by willful violations may recover certain costs.  *Id.* at 123.  Importantly,

14

ultimately agree with the District Court.  In establishing the defense, the *University Medical* decision clearly did not intend to, and insists that it did not, create a "good faith" exception like the one later established in § 362(k).[38]  Despite some overlap, we continue to read *University Medical* as establishing a "willfulness" defense that is separate and distinct from one of good faith alone.  We, like the District Court, observe no direct conflict between *University Medical* and § 362(k) and conclude that *University Medical* remains good law.

---

however, that case did not consider the possible application of a *University Medical* defense.  In short, though some of the relevant case law reflects a struggle to maintain the slight (but meaningful) distinction between a "willfulness" defense under *University Medical* and a "good faith" defense under § 362(k), our precedent does not require a different conclusion than the one we reach today.  For this reason, we need not address CCU's argument that the Supreme Court has rejected a strict-liability standard for violations of a bankruptcy discharge.  *See* Appellant's Br. at 33-37 (citing *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019)).

[38]    973 F.2d at 1088.  Absent rehearing of the full Court, it is not our practice to second guess whether it should have done so.  *See* Third Circuit Internal Operating Procedure 9.1 ("It is the tradition of this court that the holding of a panel in a precedential opinion is binding on subsequent panels.  Thus, no subsequent panel overrules the holding in a precedential opinion of a previous panel.  Court en banc consideration is required to do so."); *see also United States v. Gen. Battery Corp.*, 423 F.3d 294, 300-01 (3d Cir. 2005).

**III.**

*University Medical*, however, does not help CCU. Unlike the defendant in *University Medical*, CCU has not pointed to any compelling persuasive authority that supports its position. Instead, the University predominantly relies on the absence of case law addressing these precise facts. We have found no authority that addresses the specific issue of whether a college violates the stay by refusing to provide a transcript that affirmatively includes a graduation date. But a lack of case law to the contrary does not render the law sufficiently unsettled under *University Medical*.[39] Rather, the defendant must point to authority that reasonably supports its belief that its actions were in accordance with the stay.[40] CCU has not done so here.[41]

CCU argues that two bankruptcy courts within our Circuit have held that a college does not violate the stay by

---

[39]    973 F.2d at 1088.

[40]    *Id.* at 1089 (noting that the defendant's actions were "taken in reliance on statutory direction and case law support" and therefore "were not 'willful'").

[41]    CCU also stresses that at the time it refused to provide Aleckna with a complete transcript, her student debt had only been characterized as discharge*able* but had not actually been discharg*ed*. This is because dischargeable debt is not formally extinguished until the debtor completes making payments under the restructuring plan. *See* 11 U.S.C. § 1328(a). CCU fails to show, however, why that distinction would make any difference in this case. It has not cited any on-point, persuasive case law that would justify its apparent

16

refusing to give a student-debtor any transcript—complete or not—and that these cases led it to reasonably believe that its actions were permissible or perhaps even generous.[42]  But the

belief that its conduct complied with the stay—regardless of whether the debt was "dischargeable" or "discharged." Instead, it admittedly relies only on the general "law of discharge, the lack of any contrary authority, and the lack of any authority dealing with this issue" in making its point. Appellant's Br. at 33.  The lack of authority to the contrary or silence on a particular issue is not tantamount to a reliance on "persuasive legal authority."  *Univ. Med.*, 973 F.3d at 1088.

[42]      *See In re Billingsley*, 276 B.R. 48, 51-52 (Bankr. D.N.J. 2002); *In re Najafi*, 154 B.R. 185, 189-91 (Bankr. E.D. Pa. 1993), *abrogated by In re Mehta*, 310 F.3d 308 (3d Cir. 2002).  In addition to those cases, CCU also claims that this Court has previously considered this issue and endorsed its view in *Johnson v. Edinboro State Coll.*, 728 F.2d 163 (3d Cir. 1984).  Though *Johnson* did consider whether a college may retain a debtor's transcript in some cases, that case is distinguishable because it involved the non-discrimination provision contained in Bankruptcy Code § 525.  *Id.* at 164-65; *see* 11 U.S.C. § 525(c)(1) ("A governmental unit that operates a student grant or loan program . . . may not deny a student grant[] [or] loan . . . to a person that is or has been a debtor under this title.").  It did not involve an allegedly willful violation of the stay under § 362.  As the District Court noted below, *Johnson* is not on point.  *Aleckna*, 2019 WL 4072405, at \*5.  Even if we were to accept CCU's argument that the "non-discrimination" principles in *Johnson* overlap with those under § 362, *see Billingsley*, 276 B.R. at 51-52, that case is still not on point, as it involved non-dischargeable student debt.

17

cases on which CCU relies are distinguishable. In *In re Billingsley*, the bankruptcy court concluded that the school did not violate the automatic stay by refusing to turn over a transcript because the debt in that case was "concededly nondischargeable."[43] Likewise, in *In re Najafi*, the debt at issue was determined to be an "advance of credit" or "educational loan" that was also non-dischargeable under the Bankruptcy Code.[44] Here, Aleckna claims that, at the time of trial, her debt had not yet been formally discharged because she

---

*Johnson*, 728 F.2d at 165 ("Johnson's loans have not been discharged, indeed they are nondischargeable, and whatever remedies he may have against the college withholding the transcript, he cannot seek relief under § 525 of the Bankruptcy Code.").

[43]    276 B.R. 48, 52 (Bankr. D.N.J. 2002).

[44]    154 B.R. 185, 189-90 (Bankr. E.D. Pa. 1993), *abrogated by In re Mehta*, 310 F.3d 308 (3d Cir. 2002). In *Mehta*, this Court criticized the *Najafi* court's interpretation of Bankruptcy Code § 523(a)(8), which exempts "educational benefit overpayment[s] or loan[s]" from bankruptcy discharge, noting that it unnecessarily "inserted commas into the relevant sections . . . and interpreted the statute as it read after that [incorrect] change in punctuation." 310 F.3d at 316. We note that *Billingsley* has also been criticized by other courts. *See, e.g.*, *Mu'min*, 374 B.R. at 163 (disagreeing with the court's reliance on our decision in *Johnson*, which did not involve a § 362 violation, and for overlooking another "critical factor" not dispositive here).

18

was still making payments pursuant to her restructuring plan.[45] But nothing in the record suggests that the debt was ever considered a non-dischargeable student loan by the Bankruptcy Court, as was the case in *Billingsley* and *Najafi*. To the contrary, CCU voluntarily withdrew its challenge *with prejudice*, indicating that it did not contest Aleckna's position that the debt was dischargeable under the Bankruptcy Code.

To the extent *Billingsley* and *Najafi* are still relevant (though distinguishable), we note that many other federal courts, including three of our sister circuits, have endorsed Aleckna's contrary view in similar, though not identical, contexts.[46] The two outlier cases on which CCU relies do not

---

[45] *See* 11 U.S.C. § 1328(a) (discharge generally cannot be entered until after the debtor "complet[es] . . . [making] all payments under the plan").

[46] *See* Appellee's Br. at 26-28 (collecting cases); *In re Kuehn*, 563 F.3d 289, 294 (7th Cir. 2009) (affirming an award of damages and fees for the university's failure to provide a transcript, even though the debt at issue may have been non-dischargeable); *In re Gustafson*, 111 B.R. 282, 288 (B.A.P. 9th Cir. 1991) (finding a willful violation where the school refused to provide the debtor with a transcript, even though the debt at issue was presumptively non-dischargeable), *rev'd on other grounds*, 934 F.2d 216 (9th Cir. 1991); *In re Merchant*, 958 F.2d 738, 742 (6th Cir. 1992) (concluding that the university violated the stay for refusing to provide a transcript even though the debt was presumptively non-dischargeable); *see also In re Parker*, 334 B.R. 529, 534-36 (Bankr. E.D. Mass. 2005) (school violated the stay by refusing to allow a student to register for classes); *In re Moore*,

create a split of authority to render the law unsettled within the meaning of *University Medical*.[47]   Indeed, the University's purported belief that it was not required to provide Aleckna with *any* transcript based on those cases is seemingly inconsistent with its ultimate decision to send her a copy, albeit an incomplete version.

Because the University has failed to show that the law regarding the transcript issue was sufficiently unsettled within the meaning of *University Medical*, we agree with the District Court that its violation of the stay was willful.

## IV.

CCU's final argument is that the District Court erred in awarding damages and attorneys' fees because there was no affirmative injury in this case.   To recover such relief, the debtor must be "injured" by the stay violation.[48]   CCU argues

---

407 B.R. 855, 860-61 (Bankr. E.D. Va. 2009) (university violated discharge injunction by refusing to provide a student-debtor with a degree).

[47]   *See In re Theokary*, 444 B.R. 306, 323 n.30 (Bankr. E.D. Pa. 2011) (declining to apply the *University Medical* defense where the relevant legal principles were not "universally recognized" but were also not "the subject of any robust judicial debate").

[48]   11 U.S.C. § 362(k)(1) ("[A]n individual *injured by any willful violation* of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in

20

that Aleckna did not sustain any meaningful "injury" from her delayed receipt of a complete transcript. It recognizes that she was awarded $230.16 for the time she took off from work to attend trial, but claims that this was the only tangible harm she incurred, and that it was improper to tack substantial attorneys' fees onto this modest amount. But CCU cites no authority for its position that a debtor's lost wages from attending trial, even if a modest amount, is not a legitimate financial harm.[49] Nor does CCU provide a compelling explanation as to why the attorneys' fees do not constitute a financial injury on their own. Indeed, this Court has previously acknowledged that a debtor may suffer "financial injury in the form of attorneys' fees"

appropriate circumstances, may recover punitive damages.") (emphasis added).

[49] Though the facts are not identical, Aleckna has cited several bankruptcy cases where debtors were awarded similar financial relief. *See, e.g.*, *In re Grochowski*, Nos. 5:06-bk-51666-JTT, 5:11-ap-00223, 2012 WL 5306047, at *1 (Bankr. M.D. Pa. Oct. 26, 2012) (awarding damages for postage, gas to attend trial, and lost wages); *In re Meyers*, 344 B.R. 61, 66 (Bankr. E.D. Pa. 2006) (awarding compensation for lost wages "incurred by [the debtor's] use of one paid vacation day"); *In re Chambers*, 324 B.R. 326, 331-32 (Bankr. N.D. Ohio 2005) (awarding $336 in compensatory damages where the debtor "needed to miss three days of work . . . to address the [d]efendant's conduct").

when they are incurred to "enjoin further violations of the stay."[50]

In any event, Aleckna identifies several additional forms of relief awarded by the District Court that address her injuries, including: (1) three copies of her certified transcript containing a graduation date; (2) a diploma; and (3) the pre-litigation attorneys' fees she incurred while attempting to obtain her complete transcript.[51] Though the award of a transcript and diploma is non-monetary, the automatic stay is intended to protect "both financial and non-financial interests."[52] Thus, even if the financial harm to Aleckna was

---

[50] *Lansaw*, 853 F.3d at 668.

[51] The parties dispute whether Aleckna was actually awarded "pre-litigation" fees—i.e., the "defensive" attorneys' fees she incurred attempting to resolve the issue out of court *before* the litigation ensued. Appellee's Br. at 55-56. We need not resolve that issue here, however, because we conclude that Aleckna was injured by the University's violation of the stay regardless.

[52] *Lansaw*, 853 F.3d at 667-68 ("[W]e see no reason to infer that Congress intended to distinguish between the pecuniary and non-pecuniary injuries when it adopted a system of compensatory damages as a means of enforcing stay violations."). Though CCU correctly notes that Aleckna was unable to show an "actual loss" with respect to future career or educational opportunities, the Bankruptcy Court did not—contrary to the University's assertion—conclude that Aleckna suffered no losses across the board. *See Aleckna*, 543 B.R. at 725 ("No evidence was presented that Aleckna had applied to any master's program. Nor was any expert vocational or expert

arguably small, her failure to receive a complete transcript without court intervention constitutes a cognizable injury under § 362.[53]

In reaching the same conclusion, the District Court relied partially on the bankruptcy court's decision in *In re Parker*, in which a student-debtor was unable to register for the next semester's classes because she still owed the school money.[54] CCU contends that *Parker* "is inapposite since . . . the condition precedent injury [in that case] was the [student's] inability to register for classes."[55] But just as the refusal to allow a student to register for classes "deprives [her] of a service that would be available to her were she not a debtor," so does "[t]he act of withholding a debtor's transcript."[56] The record confirms that if Aleckna were not a debtor, she would have been entitled to receive a transcript confirming her graduation. Aleckna was therefore deprived of a service—the

---

testimony offered to show any projected loss of future earnings due to the . . . delay in obtaining a [degree] from [CCU] . . . It is not for the Court to speculate as to possible losses and I cannot find actual loss *in this regard*.") (emphasis added).

[53] *See Gustafson*, 111 B.R. at 288 ("An award of attorneys['] fees is appropriate 'where a debtor must resort to the courts to enforce his or her rights in consequence of a violation of the automatic stay.'" (quoting *In re Stucka*, 77 B.R. 777, 784 (Bankr. C.D. Cal. 1987))).

[54] 334 B.R. 529, 532-33 (Bankr. E.D. Mass. 2005).

[55] Appellant's Br. at 49.

[56] *Parker*, 334 B.R. at 534.

voluntary provision of a complete, certified transcript—that would have been otherwise available but for her existing debt.

The District Court therefore did not err in concluding that Aleckna had been "injured" by CCU's violation. The award of damages and attorneys' fees was appropriate.

****

Though we conclude that *University Medical* remains good law, the District Court correctly found that CCU failed to establish a defense under that case. Likewise, the District Court correctly decided that Aleckna had been injured by CCU's violation and was therefore entitled to damages and attorneys' fees.

For these reasons, we will affirm the order of the District Court.